Eugene Roosevelt POWERS and
Lila Virginia Powers
v.
SIMS AND LEVIN REALTORS.
Civ. A. No. 74–0433–R.

United States District Court,
E. D. Virginia,
Richmond Division.
Jan. 21, 1975.

Lending Act because it regularly extends consumer credit. *See* 15 U.S.C. § 1639. Jurisdiction is conferred by 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337. This matter comes before the Court on defendant's motion and plaintiffs' cross motion for summary judgment.

Eugene Roosevelt Powers and Lila Virginia Powers, septuagenarian social security pensioners, reside in a heavily mortgaged home which is alleged to be in a substantial state of disrepair. Defendant is Simon J. Levin doing business as Sims and Levin Realtors. On or about July 22, 1974, the plaintiffs borrowed $5,000 from the defendant and gave the defendant a security interest in their residence as collateral for the loan. Plaintiffs took this loan for the purpose of refinancing a $3,303.85 prior obligation to defendant and making certain home improvements. The terms of this loan and the circumstances surrounding its making are the subject of this law suit.

The plaintiffs allege that they borrowed the $5,000 from defendant with the understanding that they would be able to pay it back in $50.00 monthly payments. Plaintiffs then contracted with one Williford to supply the requisite home improvements. After the work had begun, Williford and his wife came to the plaintiffs' residence and asked them to sign some papers, among which was a deed of trust creating a security interest in the home. Eugene Powers admits signing a number of the papers and Lila, who is blind, admits making her mark on some of the papers. Plaintiffs contend, however, that the papers were not read and they were not aware of what they were signing, and were not given copies of what they signed.

Defendant in rebuttal, has produced certain documents dated July 22d and signed by the plaintiffs on July 24th with the Willifords as witnesses: (1) A deed of trust note for $5,000 which states that the loan is to be repaid in fifty-nine monthly installments of $65.00 each with the balance due at the end of

Robert F. Flinn, John M. Levy, Neighborhood Legal Aid Society, Richmond, Va., for plaintiffs.

John W. Pearsall, McCaul, Grigsby & Pearsall, Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs bring this action under the Truth-In-Lending Act ("the Act"), 15 U.S.C. § 1601 *et seq.*, seeking both recision of a home improvement loan contract made with defendant Sims and Levin Realtors and money damages because of defendant's alleged massive violations of the requirements of the Act and Regulation Z, 12 C.F.R. § 226 *et seq.* Defendant, a Richmond, Virginia real estate business enterprise engaging in real estate transactions, mortage loans, and home improvement loans, is subject to regulation by the Truth-In-

five years; (2) A deed of trust notarized by William A. Williford whereby the plaintiffs conveyed their residence and a ten acre tract of land to a trustee to secure the home improvement loan; (3) A "DISCLOSURE STATEMENT OF LOAN"[1] which the plaintiffs contend does not meet the requirements of the Act; (4) A *"Right of Recision"* document which indicates that plaintiffs had until midnight July 26, 1974 to rescind the transaction.

The plaintiff and Williford apparently fell out in early September over the terms and conditions of the contract and the plaintiffs sought legal counsel when they allegedly could not get Williford to complete the agreed upon improvements. Counsel from Legal Aid whom plaintiffs had retained on September 17th wrote defendant requesting copies of all documents evidencing the transaction. Plaintiffs received the documents on the 19th and then, on the advice of counsel, mailed on the 20th an offer of recision to the defendant. Defendant rejected plaintiffs' offer in a letter dated September 25, 1974. Plaintiffs on October 1, 1974, offered to return to defendant such property as represented improvements paid for by the loan, or the reasonable value of such improvements. The defendant refused to rescind on this basis and countered that they would cancel the home improvement contract should plaintiffs comply with certain stated conditions. Plaintiffs then filed this suit under the Act to enforce their asserted right to rescind the contract and recover damages.

Plaintiffs bring two claims before the Court: a federal claim which alleges numerous violations of the Act and Regulation Z and a state law claim, here on a theory of pendent jurisdiction, by which they seek recision of the deed of trust note and deed of trust on the grounds that they were procured through fraud and misrepresentation.

II.

The Truth-In-Lending Act was passed in 1968 after eight years of increasing congressional concern with consumer ignorance about and sharp practice in the consumer credit industry. *Mourning* v. *Family Publications Service, Inc.*, 411 U.S. 356, 363, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1974). The purpose of the act was to create the conditions for full dissemination of credit information to consumers so that they would have the facts with which to make rational and informed credit judgments. The full flow of information among economic actors is an essential precondition for the efficient functioning of a free market economy. *Id.*, at 363–64, 93 S. Ct. 1652. Congress, operating under the assumption that the malfunctioning of the consumer credit market could be attributable to the wide spread consumer ignorance and misinformation concerning consumer credit alternatives, sought to legislate an environment which would enhance and strengthen free competition in the consumer credit industry. 15 U. S.C. § 1601. It determined that the most effective means of insuring the free flow of information to credit consumers was a statutory requirement of full disclosure by sellers of consumer credit. *United States v. Fanning*, 477 F.2d 540, 544–45 (4th Cir. 1973). The Act and the regulations promulgated under the Act by the Federal Reserve Board[2] embody the further principle that full disclosure could be facilitated by requiring industry wide standardization of credit terms and by strictly en-

---

1. Defendant's "DISCLOSURE STATEMENT OF LOAN" is set forth at Appendix A.

2. The Federal Reserve Board is authorized by the Act to promulgate such regulations as would fully effectuate the purposes of the Act and effectively discourage the potential use of unscrupulous tactics by those few creditors who would attempt to evade the mandate of the Act. *Charnita, Inc.* v. *FTC*, 479 F.2d 684, 686 (3d Cir. 1973). Accordingly, the Board has promulgated Regulation Z which delineates within the broad congressional outline the circumstances under which creditors must disclose and specifies the disclosures that must be made. 15 U.S.C. § 1638.

forcing industry adherence to the standardized terms. *Palmer* v. *Wilson*, 359 F.Supp. 1099, 1101 (N.D.Calif.1973) (Zirpoli, J.), *vacated and remanded on other grounds*, 502 F.2d 860 (9th Cir., 1974); *see* 15 U.S.C. § 1604. The standardization requirement thus enables the consumer "to compare more readily the various credit terms available to him and avoid the uninformed use of credit," 15 U.S.C. § 1601.

■ The Truth-In-Lending Act is remedial in nature. *N. C. Freed, Inc.* v. *Board of Governors of Federal Reserve System*, 473 F.2d 1210, 1214 (2d Cir. 1973). It represents in large part a vigorous congressional response to a history of sharp and fraudulent practice in the home improvement loan industry. *See* 114 Cong.Rec. 14384 (1968) (remarks by Rep. Patman, D–Tex.); *N. C. Freed, Inc.* v. *Board of Governors of Federal Reserve System, supra*, 473 F.2d at 1214–15. Since the Act was designed to remedy congressionally perceived widespread abuses by home improvement lenders, its requirements must be strictly enforced in order to promote the twin goals of disclosure and standardization and, thus, to afford consumers of credit the expansive protection envisioned by Congress.

### III.

The plaintiffs allege that the defendant has violated the act its implementing regulations by:

1. Failing to identify the method of computing any unearned portion of the finance charge in the event of prepayment of the obligation as required by 12 C.F.R. § 226.8(b)(7);

2. Failing to print the terms "finance charge" and "annual percentage rate" in print more conspicuous than that used for other disclosures as required by 12 C.F.R. §§ 226.6(a) and 226.8(d)(3);

3. Failing to clearly and conspicuously disclose the total number of payments scheduled for repayment of the indebtedness as required by 12 C.F.R. §§ 226.6(a) and 226.8(b)(3);

4. Failing to state the total amount of the finance charge using the term "finance charge" as required by 12 C.F.R. §§ 226.6(a) and 226.8(d)(3);

5. Failing to utilize a recision notice [3] complying with 12 C.F.R. § 266.9(b), *i. e.*, a recision notice "printed in capital and lower case letters of not less than 12 point bold-faced type on one side of a separate statement which identifies the transaction to which it relates."

6. Understating the "annual percentage rate" by more than one-quarter of one percent in violation of 12 C.F.R. § 226.5(b);

7. Failing to furnish each plaintiff with two copies of the recision notice as required by 12 C.F.R. §§ 226.9(b) and 226.6(e); and

8. Failing to furnish each plaintiff with a duplicate of the instrument and a copy of the disclosure statement as required by 12 C.F.R. §§ 226.8(a) and 226.6(e).

The Court concludes that it can appropriately dispose of plaintiffs' first six contentions under Rule 56, F.R.Civ.P., since only questions of law are involved. Contentions (7) and (8), however, involve disputed questions of material fact which are inappropriate for resolution by the summary judgment vehicle. The Court will turn first to plaintiffs' first six contentions and then move to a brief discussion of its grounds for concluding that (7) and (8) may not appropriately be resolved on a summary judgment motion.

### A. ISSUES OF LAW

1. Failure to Identify the Method of Computing Any Unearned Portion of the Finance Charge in the Event of Prepayment of the Obligation.

Title 12 C.F.R. § 226.8(b)(7) requires the creditor to disclose "the method of computing any unearned portion of the

3. See Note 6, *infra*.

finance charge in the event of prepayment in full of an obligation." The Federal Reserve Board has interpreted § 226.8(b)(7) as requiring "identification of the rebate method used on precomputed contracts." 12 C.F.R. Interpretations § 226.818(c). If the credit contract does not provide for rebate of any unearned portion of the finance charge in the event of prepayment, the creditor is required to disclose that fact also. 12 C.F.R. § 226.8(b)(7).

■ Some commonly used methods for computing the unearned portion of the finance charge are the "rule of 78's," the "straight line" method, and the "pro rata" method.[4] The regulation prescribes no method by which unearned prepaid interest must be computed; it merely requires that the method used must be disclosed in order to afford the customer the opportunity to compare the cost of available credit opportunities.[5] Furthermore, every court which has considered the matter has held that the creditor's method for computing unearned prepaid interest must be disclosed to the consumer. *See, e. g., Bone* v. *Hibernia Bank,* 493 F.2d 135 (9th Cir. 1974); *Roberts* v. *National School of Radio and TV Broadcasting,* 374 F.Supp. 1266 (N.D.Ga.1974).

With respect to prepayment, defendant's disclosure statement reads:

Prepayment: The borrowers shall have the right of anticipation in whole or in part at any time with interest to be abated on the amount paid.

Defendant's statement discloses a right in the plaintiffs to abatement of prepaid interest upon early retirement of the obligation, but it does not indicate the method by which the unearned portion of the finance charge is to be computed. Defendant, therefore, has clearly failed to comply with the disclosure requirement of 12 C.F.R. § 226.8(b)(7).

■ Defendant seeks to excuse the failure to comply with § 226.8(b)(7) because his disclosure statement indicated that unearned prepaid interest would be "abated" rather than "rebated" and the act does not require disclosure, he maintains, where the creditor does not intend to rebate "abated" unearned interest. The Court concludes that the defendant cannot evade with semantical quibble the requirement of the regulation.

First, "abate" means "to reduce in amount." The Random House Dictionary of the English Language, 2 (Stein ed. 1971). Thus, defendant represented to the plaintiffs that the amount of unearned prepaid interest charged plaintiffs would be reduced if they retired the loan early. This representation of abatement carries an implicit representation that abated unearned interest will be rebated to the consumer. Otherwise, if the creditor did not rebate the abated finance charge, there could be no reduction, or abatement, of prepaid unearned interest by virtue of early retirement of the loan. *Cf. Sheppard* v. *Hidalgo Co.,* 126 Tex. 550, 83 S.W.2d 649, 657 (1935) (when an already levied tax is abated, the taxpayer is relieved of the tax and the tax is remitted.)

In any event, the operation of the regulation does not depend upon whether the creditor intends to rebate the unearned prepaid interest. Whether the creditor intends to rebate the unearned prepaid interest, or not, the regulation

---

4. *See* Federal Reserve Board Advisory Letter by Kenneth H. Kenyon, March 6, 1970, in 4 CCH Consumer Credit Guide, ¶ 30,522. A concise description of the "rule of 78's" may be found in *Johnson* v. *Associates Finance, Inc.,* 369 F.Supp. 1121, 1123 n. 5 (S.D.Ill.1974), and a more detailed description may be found in *Bone* v. *Hibernia Bank,* 493 F.2d 135, 137 (9th Cir. 1974).

5. It is not at all clear that the disclosure of the computational method provides information of any value to the consumer. Very few consumers, for example, when confronted with one credit alternative utilizing the "rule of 78's" and another using the "straight line" method will be able to make a meaningful comparison without undertaking further research into the manner of operation of the two methods. Nevertheless, the regulations apparently do not require that the method be explained or described; they only require that the computational method be identified by name. 12 C.F.R. § 226.818(c); *Accord, Bone* v. *Hibernia Bank,* 493 F.2d 135 (9th Cir. 1974).

clearly requires that the method of computing the unearned prepaid interest be disclosed. This the defendant did not do.

■ Furthermore, the defendant's belated disclosure that it never intended to rebate any of the unearned prepaid interest is an admission of non-compliance with the requirement of 12 C.F.R. § 226.8(b)(7) that "[i]f the credit contract does not provide for any rebate of unearned finance charges upon prepayment in full, this fact shall be disclosed." Defendant's failure to explicitly disclose to plaintiffs that it did not intend to rebate any unearned finance charge in the event of prepayment in full constitutes an additional violation of the act.

Finally, since defendant has asserted in its memorandum dated December 16, 1974 that no disclosure was intended because no rebate was contemplated, the Court presumes that defendant has abandoned the defense urged in its Motion for Summary Judgment dated November 12, 1974, that non-compliance was "not intentional and resulted from a bona fide error."

Accordingly, summary judgment shall be entered for the plaintiffs on this issue.

2. Failure to Print the Terms "Finance Charge" and "Annual Percentage Rate" in Print More Conspicuous Than That Used for Other Disclosures.

Where the act and regulations require creditors to use the terms "finance charge" and "annual percentage rate," those terms must be "printed more conspicuously than other terminology required by [Regulation Z]." 12 C.F.R. § 226.6(a). The terms "finance charge" and "annual percentage rate" were clearly intended to be the most important disclosures required by their act and implementing regulations, and their importance was to be signified by their being printed in print more conspicuous than that used for any other disclosure.

Defendant's *"Disclosure Statement of Loan"* fails to give these two terms the prominence and importance required by § 226.6(a) and, therefore, fails to comply on its face with the mandate of the regulation. Defendant has printed the terms "finance charges [sic]" and "annual percentage rate" in *all caps.* Defendant has, likewise, printed the term "total payments," a disclosure required by § 226.8(b), and the terms "interest," "brokerage," and "payments" in *all caps.*

■ Defendant contends that its having underlined the term "finance charges [sic]" underscores that word's prominence and brings it into substantial compliance with the regulation. The regulation does not, however, state that its requirement that the terms "finance charge" and "annual percentage rate" be given special prominence on the disclosure statement can be satisfied by underlining; it states explicitly that those two terms must be printed in print more conspicuous than any other disclosure required to be made.[6] Since there is no dispute that the defendant failed to print the terms "finance charge" and "annual percentage rate" in print more conspicuous than that used for any other disclosures, summary judgment shall be granted for plaintiffs on this issue.

3. Failure to Clearly and Conspicuously Disclose the Total Number of Payments Scheduled to Repay the Indebtedness.

Section 226.8(b)(3) of 12 C.F.R. required defendant to disclose "[t]he number, amount, and due dates or periods of payments scheduled to repay the indebtedness." The "PAYMENTS" paragraph of defendant's "DISCLOSURE STATEMENT OF LOAN" reads:

The loan, with interest at 10% per annum on the unpaid balance, is repaya-

---

6. Even if underlining satisfied the conspicuosity requirement of the regulation (and the Court has held that it does not), the defendant still failed even to underline "annual percentage rate."

ble by equal monthly installments of $65.00 each, for a period of 59 months, and the balance is due and payable 5 years after date.

■ The regulation requires that the defendant state the number of payments scheduled to repay the loan. That number is 60—59 monthly payments of $65.00 each and a final balloon payment of $3,258.15. Defendant nowhere states that 60 payments will be required to repay the indebtedness. Plaintiffs, of course, might have arrived at the number by simple addition. The requirement of the regulation is, however, not satisfied by a creditor's disclosure of foundation information by which, it is hoped, consumers will be enabled to arrive at the final computations themselves. The regulation requires full disclosure of the final computation, here the number of payments, and nothing less will satisfy the full disclosure mandate of the act. Strictly construing the requirement of the regulation in order to promote the congressional goal of full disclosure, the Court concludes that the defendant violated § 226.8(b)(3) by not disclosing the number of payments needed to retire the indebtedness and shall enter summary judgment for the plaintiffs on this issue.

4. Failure to State the Total Amount of the Finance Charge Using the Term "Finance Charge."

Section 226.8(d)(3) of 12 C.F.R. requires creditors to disclose "the total amount of the finance charge, with description of each amount included, using the term 'finance charge'." Defendant's disclosure statement reads:

FINANCE CHARGES:

| INTEREST | $2,093.15 |
|---|---|
| BROKERAGE | $ 250.00 |
| TOTAL FINANCE CHARGES | $2,343.15 |

Defendant's disclosure statement nowhere contains the term "finance charge" as required by the regulation. The components of the finance charge—interest and brokerage—are broken down as required by the act and the implementing regulation, but the "total amount of the finance charge" which is explicitly required to be labeled "finance charge" is, instead, denoted as TOTAL FINANCE CHARGES.

■ This requirement is quite technical, but the Congress did not intend creditors to escape liability where only technical violations were involved. Indeed, the technical requirements of the act must be strictly enforced if the goal of standardization of terms, which is a requisite if consumers are to be able to make meaningful comparisons of available credit alternatives, is to be achieved. The Court concludes that, since the defendant has failed to state the total amount of the finance charge using the term "finance charge," it has violated § 226.8(d)(3) of 12 C.F.R. and summary judgment shall be entered for plaintiff.[7]

7. Defendant raises the "clerical error" defense provided by the Act to excuse its lack of compliance with the requirements of the Act and Regulation Z. 15 U.S.C. § 1640(c) reads:

A creditor may not be held liable in any action brought under this section for a violation of this chapter if the creditor shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid any such error.

The Court concludes that this defense is unavailable to the defendant with respect to plaintiffs' contentions (2)–(5). The defense absolves creditors from liability only where they can show by a preponderance of the evidence that violations of the disclosure requirement were unintentional and of a typographical or arithmetical nature. *E. g. Ratner v. Chemical Bank New York Trust Co.,* 329 F.Supp. 270, 281 (S.D.N.Y.1971). Defendant's violation of the Act and Regulation Z which are catalogued in plaintiffs' contentions (2)–(5) are clearly legal errors, not clerical mistakes, arising from its failure to conscientiously comply with the disclosure requirements of the Act. The disclosure and standardization policies of the Act would be vitiated should the Court construe § 1640(c) to excuse errors of law as well as mistakes, and this Court shall, accordingly, decline defendant's invitation to so do.

5. Failure to Utilize a Recision Notice

"Printed on One Side of a Separate Statement Which Identifies the Transaction To Which It Relates."

Although § 226.9(b) of 12 C.F.R. [8] is not one of the more clearly phrased regulations implementing the Truth-In-Lending Act, it nevertheless apparently requires the creditor to give a customer who has a right to rescind a transaction notice of that right by providing the customer with two copies of a separate statement identifying the transaction between the parties and containing:

a. The standardized "Notice to Customer Required by Federal Law," found in 12 C.F.R. § 226.9(b); and

b. 12 C.F.R. § 226.9(d) which reads in its entirety:

(d) Effect of rescission. When a customer exercises his right to rescind under paragraph (a) of this section, he is not liable for any finance or other charge, and any security interest becomes void upon such a rescission. Within 10 days after receipt of a notice of rescission, the creditor shall return to the customer any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the customer, the customer may retain possession of it. Upon the performance of the creditor's obligations under this section, the customer shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the customer shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the customer, at the option of the customer. If the creditor does not

8. 12 C.F.R. § 226.9(b) reads:

(b) Notice of opportunity to rescind. Whenever a customer has the right to rescind a transaction under paragraph (a) of this section, the creditor shall give notice of that fact to the customer by furnishing the customer with two copies of the notice set out below, one of which may be used by the customer to cancel the transaction. Such notice shall be printed in capital and lower case letters of not less than 12 point bold-faced type on one side of a separate statement which identifies the transaction to which it relates. Such statement shall also set forth the entire paragraph (d) of this section, "Effect of rescission." If such paragraph appears on the reverse side of the statement, the face of the statement shall state: "See reverse side for important information about your right of rescission." Before furnishing copies of the notice to the customer, the creditor shall complete both copies with the name of the creditor, the address of the creditor's place of business, the date of consummation of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the customer may give notice of cancellation. Where the real property on which the security interest may arise does not include a dwelling, the creditor may substitute the words "the property you are purchasing" for "your home," or "lot" for "home,"

where these words appear in the notice.

Notice to customer required by Federal law:

You have entered into a transaction on
. . . . . . . . . .
(date)
lien, mortgage, or other security interest on your home. You have a legal right under Federal law to cancel this transaction, if you desire to do so, without any penalty or obligation within 3 business days from the above date or any later date on which all material disclosures required under the Truth Lending Act have been given to you. If you so cancel the transaction, any lien, mortgage, or other security interest on your home arising from this transaction is automatically void. You are also entitled to receive a refund of any downpayment or other consideration if you cancel. If you decide to cancel this transaction, you may do so by notifying . . . . . . . . .
(Name of creditor)
at (Address of creditor's place of business) by mail or telegram sent not later than midnight of . . . . You may also use any
(Date)
other form of written notice identifying the transaction if it is delivered to the above address not later than that time. This notice may be used for that purpose by dating and signing below.

I hereby cancel this transaction.
. . . . . . . . . . . . . .
(date)        (customer's signature)

take possession of the property within 10 days after the tender by the customer, ownership of the property vests in the customer without obligation on his part to pay for it.

■ The Court concludes that the recision notice utilized by defendant complies with the requirements of § 226.9(b). The separate statement requirement means that the defendant must provide the consumer with a recision statement which is not combined on the same sheet of paper with any other disclosure or document, or on the reverse side of any other disclosure or document. Defendant's recision notice is printed on a separate statement and it contains both the notice required by § 226.9(b) and § 226.9(d) in its entirety. Accordingly, summary judgment shall be granted to the defendant on this issue.

   6. Understatement of the Annual Percentage Rate by One Quarter of One Per Cent.

■ Defendant in its disclosure statement states that the "annual percentage rate" for the loan is 12%. Plaintiffs now admit that the actual annual rate was 11.546422%, see Supplemental Response to Request for Additional Admissions (Nov. 19, 1974), so that defendant overstated rather than understated the annual percentage rate. Since "overstatement of the annual percentage rate does not in itself constitute a violation of the act," 12 C.F.R. § 226.-6(h), defendant shall be granted summary judgment on this issue.

**B. DISPUTED ISSUES OF MATERIAL FACT**

Plaintiffs contend that defendant failed to furnish each plaintiff with a copy of the disclosure statement and two copies of the recision notice. Defendant proffers signed acknowledgements from plaintiffs that they each received a copy of the disclosure statement and two copies of the recision statement and moves this Court for summary judgment on

the issue of receipt on the ground that the acknowledgments of receipt preclude the possibility of non-delivery.

■ The question, then, is whether the Court may grant summary judgment to the defendant on the delivery issue at this stage of the litigation. A motion for summary judgment may only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Rule 56(c), F.R.Civ.P. The Court concludes that at this juncture the question of delivery remains a disputed issue of material fact inappropriate for resolution by a summary judgment order.

Even though receipt acknowledgments create a presumption of delivery, they do not thereby constitute an irrebuttable presumption. Recognizing the possibility that some creditors might try to evade the disclosure requirements of the act by keeping the receipt acknowledgments signed by their debtors, Congress legislated a rule of evidence for purposes of the Truth-In-Lending Act which states that receipt acknowledgments do no more than create a rebuttable presumption of delivery.

> Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this Title by a person to whom a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof. 15 U.S.C. § 1635(c).

Plaintiffs dispute in their pleadings and in their affidavits defendant's contention that they were each furnished a copy of the disclosure notice and two copies of the recision notice. The question of delivery is material both to the establishment of plaintiffs' recision remedy under the Act and to their state law cause of action for fraud and misrepresentation.[9] The Court is not

---

9. The question of delivery, however, may no longer be material to this lawsuit. Plaintiffs have demonstrated as a matter of law

that defendant has committed at least four disclosure violations and are therefore entitled to rescind under the Truth-in-Lending

satisfied that the defendant at this stage of the litigation has sufficiently demonstrated that there is no dispute as to the issue of delivery such that it should be entitled to summary judgment. Furthermore, congressional policy, as expressed by 15 U.S.C. § 1635(c), precludes granting a creditor summary judgment on the basis of a receipt acknowledgment alone where the plaintiffs deny by affidavit that they received the disclosures required by the Act. Insofar as plaintiffs' affidavits rebut the defendant's protestations of delivery, the Court cannot conclude that there is no genuine issue as to the fact of delivery which would entitle the defendant to summary judgment as a matter of law. See *Dotson* v. *Ramada Inn*, 498 F.2d 1397 (4th Cir., 1974) (per curiam).

### IV.

The Truth-in-Lending Act provides a range of remedies for the debtor when the creditor violates its disclosure requirements. The aggrieved debtor may recover civil penalties [10] and attorney's fees,[11] and in certain circumstances may rescind the consumer credit transaction.[12] Additionally, the creditor who refuses to rescind or otherwise comply with the recision mechanism established by the Act may forfeit any interest that it may have in property or home improvements which have been financed with the proceeds of the transaction.[13] Plaintiffs seek the full panoply of remedies provided by the Act—civil penalties, recision, statutory forfeitures, and attorney's fees—and the Court will now discuss seriatim their entitlement to same.

### A. Civil Penalties.

■ By demonstrating that defendant, as a matter of law, has violated the disclosure requirements of the Act in at least four instances,[14] the plaintiffs have established their right to recover the § 1640(a)(1) civil penalty from defendant. Section 1640(a)(1) provides that the civil penalty shall be twice the amount of the finance charge but it places a $1,000 maximum and a $100 minimum on the amount to be exacted. Since the

Act. See Part IV.B *infra.* Since it shall decree recision under the Truth-in-Lending Act, the Court need not consider the plaintiffs' asserted right of recision under state law.

10. 15 U.S.C. § 1640(a), which provides the measure of the civil penalty, reads: Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of: (1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and
(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

11. 15 U.S.C. § 1640(a)(2). See note 7, *supra.*

12. 15 U.S.C. § 1635(a) states the recision remedy:
Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

13. 15 U.S.C. § 1635(b). See note 13, *infra.*

14. Defendant has committed a further violation of the Act in that its recision notice only gave plaintiffs until midnight Friday, July 26, 1974, the second business day following delivery of the disclosure statement and recision notices, to rescind.

amount of the finance charge was $2,343.15, plaintiffs are entitled to the maximum penalty. The only question is whether they may *each* recover the maximum penalty or are limited to a single recovery of $1,000. The Court from its reading of the Act and the applicable regulations and agency interpretations concludes that each plaintiff is entitled to recover the statutory maximum of $1,000.

The regulations required defendant to furnish each plaintiff with a disclosure statement containing the requisite disclosures since the transaction created a security interest in their principal residence and was thus subject to recision. 12 C.F.R. § 226.6(e); Regulation Z Interpretation 226.603; See Federal Reserve System Staff Opinion Letters, CCH Consumer Credit Guide ¶¶ 30,316; 30,236; and 30,370. The clear language of § 1640(a)(1) imposes civil liability upon "any Creditor" who fails to disclose "to *any person* any information required under this part to be disclosed to *that person*," and provides that *"that person"* may recover the civil penalty. (emphasis supplied) Since each plaintiff was entitled to a disclosure statement containing the requisite disclosures and since defendant's disclosure statement, even if received by plaintiffs, fell far short of the disclosure requirements of the Act, each plaintiff may therefore recover the maximum civil penalty[15]. *Simmons* v. *American Budget Plan*, 386 F.Supp. 194, 201 (N. D.Ga.1974).

**. B. Recision**

The mechanics for rescinding the loan contract are set forth at 15 U.S.C. § 1635(b):[16] (1) The debtor exercises the right of recision by giving notice to the creditor and, upon giving notice the debtor is absolved of liability "for any finance or other charge," and the security interest given the creditor is voided; (2) Within 10 days after receipt of the recision notice, the creditor must take any action necessary to reflect the termination of the security interest and must also return any money or property given by the debtor as "earnest money, downpayment or otherwise;" (3) The debtor may retain possession of any property delivered to it by the creditor pending performance by the creditor of the requirements set forth in § (2) *supra;* (4) Upon performance of the creditor's obligations in § (2), *supra,* the debtor is required to tender to the creditor any property delivered to it by the creditor, or its reasonable value if return would be impracticable; (5) If the creditor does not take possession of the property within 10 days after tendered by the debtor, ownership of the property vests in the debtor without obligation on his part to pay for it.

Plaintiff Powers gave defendant notice of the Powers' desire to rescind the transaction on September 20, 1974. By letter dated September 25, 1974, defendant rejected plaintiffs' attempted cancellation because, it asserted, plaintiffs had received copies of the disclosure statements, and their signatures on the dis-

---

15. The civil penalty does not vary with the numerosity of disclosure violations. Whether a creditor has committed one violation or four violations, the civil penalty assessed remains the same.

16. 15 U.S.C. § 1635(b) reads:
When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any

security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

closure statements were proof of that fact.

■ Because defendant's disclosure statement, even if it were received by the plaintiffs, was violative of the Act in at least four respects, plaintiffs were entitled to rescind the transaction until midnight of the third business day following receipt of a correct disclosure statement. Section 1635(b) of the Act gives debtors a "continuing" and "open-ended" power of recision so long as the *required* disclosures have not been made. *Sosa* v. *Fite*, 498 F.2d 114, 117 (5th Cir. 1974). Once the required disclosures have been made, the debtor still has until midnight of the third business day following receipt of disclosures to rescind. Since defendant never furnished plaintiffs a correct disclosure statement, plaintiffs' recision notice of September 20, 1974 was effective to rescind the transaction.

C. Statutory Forfeiture

The Court also concludes that ownership of the air conditioner and the home improvements must vest in the plaintiffs. There are two grounds for this conclusion: (1) Because defendant failed to follow the sequence for recision as set forth in § 1635(b) and insisted on unwarranted and unreasonable preconditions before it would rescind, plaintiffs as a matter of law were excused from making the statutory tender envisioned by § 1635(b); and (2) Because defendant refused plaintiffs' offer to tender of October 1st and refused again to rescind without plaintiffs first meeting its preconditions, plaintiffs' offer to tender was thereby converted to a tender and, when defendant failed to pick up its property within the ten day period, title to the air conditioner and value of the home improvements vested in the plaintiffs. Before discussing its reasons for these conclusions, the Court will first provide a recapitulation of the relevant facts.

Defendant upon receipt of the recision notice did not return within the 10 day period the $50 payment made by plaintiffs on September 6 or file with the Clerk of the Circuit Court of the County of Henrico a "release of collateral statement," § 8.9–406 of the Code of Virginia (1950), as amended, or a "termination statement," § 8.9–404 of the Code, whichever was "necessary or appropriate to reflect the termination of [the] interest created under the transaction." 15 U.S.C. § 1635(b). Defendant, to the contrary, wrote plaintiffs on September 25, 1974 denying and rejecting their right to rescind the transaction.

Even though the plaintiffs were not required to return the property constituting the home improvements, or its reasonable value if return were impracticable, until after defendant had taken the appropriate steps to effect formal release of the mortgage and had returned any money or property given by the debtor within the 10 day period, plaintiffs nevertheless on October 1, 1974, offered to return the property constituting the home improvements, or the reasonable value thereof, if defendant would reconsider its position on recision. Defendant replied by letter dated October 8, 1974, denying plaintiffs' right to rescind, and refusing to release the mortgage and return a $50 payment made by plaintiffs on September 6, 1974. In the same letter, defendant countered that it would release the mortgage and return the $50 if plaintiffs complied with certain stated preconditions: tender of $3,303.85 representing the amount plaintiffs owed on the previous loan, return of an air conditioner and payment of the reasonable value of the work done by the home improvement contractor. This counter-offer was unacceptable to plaintiffs and they brought this action on October 9, 1974.

■ First, the defendant by its refusal to rescind the transaction and return all payments within 10 days of receipt of the recision notice frustrated the orderly sequence of events envisioned by § 1635(b) recision notice;

creditor's release of the mortgage and return of payments; debtor's tender; and creditor's taking possession—see *Sosa* v. *Fite, supra,* 498 F.2d at 119, and, furthermore, by its insistence upon tender of money owed on a previous loan, and the return of the air conditioner and the reasonable value of the home improvements before it would rescind, defendant indicated that it did not intend to comply with § 1635(b) and would instead rewrite the Act to suit its own notions of debtor-creditor law. There is an elementary principle of contract law that tender by party A is excused when party B fails to or refuses to perform the essential prerequisites which trigger tender by party A. See 86 C.J.S. Tender § 5. Because of defendant's action in abandoning the orderly sequence of events contemplated by § 1635(b) and its unwarranted insistence on its own preconditions before rescinding the transaction and returning money paid by the plaintiffs, the Court concludes that tender on the plaintiffs' part would have been a futile gesture and that plaintiffs were therefore excused from making a § 1635 tender. Therefore, on this first ground title to the air conditioner and the home improvements vested in the plaintiffs ten days after their receipt of defendant's letter of September 25 in which defendant rejected and denied their right of recision. *Sosa* v. *Fite, supra,* 498 F.2d at 119.

■ Second, even if plaintiffs' offer of October 1st were considered an offer to make a tender, rather than a tender, defendant by its rejection letter of October 8th indicated to plaintiffs that it would not rescind the transaction unless first preceded by tender of $3,303.85, the amount owed on the previous loan, the air conditioner, and the value of the home improvements. The Act, however, requires only that the debtor tender the property constituting the home improvements, or its reasonable value, in order

to trigger the 10 day statutory forfeiture period; it does not contemplate, nor does it require, tender of money owed on previous loan transactions. When plaintiff offered to tender the property in order to move defendant to reconsider its refusal to rescind and defendant made its counter proposal, plaintiffs could have reasonably concluded, in the Court's view, that tender, if made, would be rejected and that tender would be a futile act. When one party willing and able to do so makes an offer to produce and is told that it won't be accepted, the offer can be deemed a tender without the objects being produced. *Guthrie* v. *Curnutt,* 417 F.2d 764, 766 (10th Cir. 1969). In sum, the plaintiffs' offer was converted to a tender by the defendant's refusal to accept it without imposing unwarranted preconditions. The Court agrees with the Court of Appeals for the Fifth Circuit that:

> "[t]o hold otherwise would create a gross anomaly, for no tender in the exact scheme envisioned by the statute could ever be effected by a debtor in the most egregious of circumstances, namely when a creditor steadfastly refuses to perform his express obligations upon receiving the notice of recision. Congress scarcely could have contemplated such a disruptive commercial standoff. We therefore conclude that under the circumstances of this case the debtor's obligation to restore the creditor to the *status quo ante* was discharged by an offer accompanying notice of recision . . . ." *Sosa* v. *Fite, supra,* 498 F.2d at 119.

Accordingly, as plaintiffs' offer of October 1st was converted to a tender by virtue of defendant's refusal to rescind, title to the air conditioner and home improvements vested in the plaintiffs on October 11th, ten days after tender was made.[17]

17. The Court is aware that the date of statutory forfeiture under the "converted offer" theory (October 11) differs from the date of statutory forfeiture under the "futility of

tender" theory (October 5). This date variation reflects the different conceptual basis for each result and, although it might be of significance in an appropriate case, it is of

In sum, the Court finds that either of the two theories just discussed supports plaintiffs' statutory forfeiture claim and it shall enter judgment for the plaintiffs.[18]

D. Attorney's Fees and Costs

Because plaintiffs have prevailed in this action, they are entitled to attorney's fees and costs. 15 U.S.C. § 1640(a)(2). Counsel for the parties will be directed by the Court to meet and confer and, hopefully, to agree on reasonable attorney's fees. If counsel cannot within 10 days of the date of the Court's order reach agreement, counsel for the plaintiffs will be directed to submit a statement of time spent litigating this action and the Court will award reasonable attorney's fees and costs.

An appropriate order shall enter.

## APPENDIX "A"

### DISCLOSURE STATEMENT OF LOAN

July 22, 1974

Name of Creditor:
Sims and Levin, acting as Broker,
Travelers Building, Richmond, Virginia

Name of Borrowers:
Eugene R. Powers and Lila V. Powers

| | | |
|---|---|---|
| Amount of Loan: | | $5,000.00 |
| Amount Financed: | | |
| Amount of Loan | $5,000.00 | |
| Less Brokerage | 250.00 | |
| Total Amount Financed: | | $4,750.00 |
| FINANCE CHARGES: | | |
| INTEREST | $2,093.15 | |
| BROKERAGE | 250.00 | |
| TOTAL FINANCE CHARGES: | | $2,343.15 |
| ANNUAL PERCENTAGE RATE: | 12% | |
| Other Charges: | | |
| Title examination & title insurance | $ 95.00 | |
| Legal fee For Deed of Trust & Note | 25.00 | |
| Cost of recording Deed of Trust | 18.00 | |
| Legal fee for Disclosure Statement | 20.00 | |
| Total Other Charges: | | $ 158.00 |

PAYMENTS: The loan, with interest at 10% per annum on the unpaid balance, is repayable by equal monthly installments of $65.00 each, for a period of 59 months, and the balance is due and payable 5 years after date.

no moment in the instant case where the plaintiffs are entitled to recover in any event under either theory.

18. Because the Court has disposed of the statutory forfeiture issue favorably to the plaintiffs, it need not decide at this time whether, as a matter of federal common law, plaintiffs' offer of October 1st constituted a tender within the meaning of the Truth-in-Lending Act whose rejection triggered the statutory forfeiture provision of § 1635(b). *Compare Clearfield Trust Co.* v. *United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) [*and*] *Textile Workers Union* v. *Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972 (1957) *with Bank of America National Trust and Savings Association* v. *Parnell*, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956).

APPENDIX "A"—Continued

Balloon Payment: There will be a balloon payment of $3,258.15 due and payable 5 years after date. NOTE: There is no agreement between the creditor and the borrowers for the renewal or extension of time for the balloon payment after it becomes due and payable.

TOTAL OF PAYMENTS: $7,093.15

Prepayment: The borrowers shall have the right of anticipation in whole or in part at any time with interest to be abated on the amount prepaid.

Late Payment Charge: The borrowers agree to pay to the agent for the holder of the note evidencing the indebtedness a late payment charge of $3.00 for each payment being more than five (5) days in arrears.

Property Insurance Required: Of the sum of $5,000.00. It may be obtained by the borrowers through any person of their choice.

Security: This loan is secured by a deed of trust on the property seven acres in Brookland District, near Greenwood Heights, Henrico County, Virginia.

Finance charges begin July 22, 1974.

We acknowledge receipt of the above disclosure, this *24th* day of *July*, 1974.

| /S/ | /S/ Eugene R. Power |
|-----|---------------------|
| Witness: W. A. Williford | Eugene R. Powers |
| | Her |
| /S/ | /S/ Lila V. (Mark X) Powers |
| Witness: Mary B. Williford | Lila V. Powers |