From an order granting plaintiff's motion for a summary judgment and denying defendant's motion for summary judgment on her counterclaim, defendant takes this appeal.
The sole issue presented to this court is whether the promissory note of Public Finance Company of Alabama (hereinafter Public Finance) complies with the provisions of Regulation Z, 12 C.F.R. § 226.8 (b)(5). We find it does not and reverse and remand. Regulation Z requires the lender to disclose:
 "(5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates. . . . If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired."
The following facts were stipulated in the lower court:
On April 5, 1973, Annette Irvin, appellant herein and defendant below, executed a promissory note to Public Finance which required repayment of a total sum of $1,342.74 in monthly installments over a thirty-six month period.
Thereafter, on June 30, 1975, Public Finance filed a complaint alleging a default in the payments by Ms. Irvin. Ms. Irvin counterclaimed that Public Finance's promissory note was violative of 12 C.F.R. § 226.8 (b)(5), in that it purported to claim a greater security interest in after-acquired property than is allowed under the pertinent provision of the Alabama Uniform Commercial Code. Tit. 7A, § 9-204 (4)(b), Code of Alabama 1940, states:
 "No security interest attaches under an after-acquired property clause . . . to consumer goods . . . when given as additional security unless the debtor acquires rights in them within ten days after the secured party gives value."
The promissory note, under a heading entitled, "DESCRIPTION AND IDENTIFICATION OF SECURITY INTEREST," declares that the loan is secured by a security agreement on: "Consumer Goods including but not limited to household goods, furniture, appliances, and personal property of all kinds and descriptions and all additions, replacements, and accessories thereto which are hereafter acquired by borrowers." Immediately before the quoted language the note contains a box which is marked with an "X" to indicate applicability of the clause to the transaction.
As this is a case of first impression in Alabama, certain prefatory comments need be addressed to Regulation Z and the Truth in Lending Act in general.
The Truth in Lending Act (hereinafter, the Act), 15 U.S.C. § 1601
et seq., was enacted in 1968 with the avowed purpose of assuring "a meaningful disclosure of credit terms so that the consumer will be able to *Page 813 
compare more readily the various credit terms available to him and avoid the uninformed use of credit. . . ." 15 U.S.C. § 1601;Mourning v. Family Publication's Service, Inc.,411 U.S. 356, 364, 93 S.Ct. 1652, 36 L.Ed.2d 318; Thomas v.Myers-Dickson Furniture Co., 479 F.2d 740, 741 (5th Cir. 1973);Woods v. Beneficial Finance Co. of Eugene, 395 F. Supp. 9, 12
(D.Ore. 1975). Congress deemed imperative the disclosure of specific categories of information to insure informed consumer decisions with regard to credit transactions. The mandatory categories of disclosures to be made by creditors in consumer loan transactions are set forth in 15 U.S.C. § 1639 (a). Subsection (a)(8) requires disclosure by the lender of "a description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates."
To effectuate the purposes of the Act, Congress vested the Board of Governors of the Federal Reserve System with authority to prescribe regulations specifying in greater detail how compliance with the Act might be achieved. 15 U.S.C. § 1604. Regulation Z was promulgated pursuant thereto.
Congress further sought to insure compliance with the Act by providing for civil liability for any creditor who failed to make any disclosure required by the Act. Likewise, Congress placed liability on the lender for reasonable attorney fees incurred by the consumer in successfully enforcing his rights, thereby encouraging private actions by individuals to promote compliance with the Act. 15 U.S.C. § 1640 (a)(2). As stated by the court in Ratner v. Chemical Bank New York Trust Company,329 F. Supp. 270, 280 (S.D.N.Y. 1971), "[T]he scheme of the statute . . . is to create a species of `private attorney general' to participate prominently in enforcement." AccordSosa v. Fite, 498 F.2d 114 (5th Cir. 1974); Jones v. Seldon'sFurniture Warehouse, Inc., 357 F. Supp. 886 (E.D.Va. 1973).
Courts have taken to heart the purpose of the Act, stating both that it is to be liberally construed in favor of the consumer, Hannon v. Security Nat. Bank, 537 F.2d 327 (9th Cir. 1976); Sellers v. Wollman, 510 F.2d 119 (5th Cir. 1975);Gerasta v. Hibernia Nat. Bank, 411 F. Supp. 176 (E.D.La. 1975);Allen v. Beneficial Finance Co., 393 F. Supp. 1382 (N.D.Ind. 1975), and also that it is to be strictly enforced. Redhouse v.Quality Ford Sales, Inc., 511 F.2d 230 (10th Cir. 1975); Powersv. Sims and Levin Realtors, 396 F. Supp. 12 (E.D.Va. 1975).
In a similar vein, numerous instances exist where the court, though stating that the violation is somewhat technical in nature, declares that the lender has not complied with the strict terms of the Act and is therefore liable for the penalty provided therein. Pennino v. Morris Kershman Co.,526 F.2d 367 (5th Cir. 1976); Powers, supra. In short, the Act "reflects a transaction in Congressional policy from a philosophy of `let-the-buyer-beware' to one of `let-the-seller-disclose.'"Allen, supra, at 1384.
Having placed the Act in perspective, we turn now to the contentions of the litigants in the instant case. Ms. Irvin's argument is as follows:
Title 7A, § 9-204 (4)(b), Alabama Code, prohibits a creditor from obtaining a security interest in consumer goods acquired by the debtor more than ten days after the secured party has given value. Despite the unequivocal language of the Code, Public Finance's promissory note professes to attach to consumer goods "of all kinds and descriptions and all additions, replacements, and accessories thereto which are hereafter acquired by borrower." Indubitably, this cannot constitute a "clear identification" of the property to which the security interest attaches in that it claims an attachment to property which is plainly disallowed by state law. Put another way, this is an express overstatement by the lender concerning the consumer property which can serve as collateral, the very type of misrepresentation the Act sought to prohibit. Accordingly, counsel for Ms. Irvin *Page 814 
concludes, the note is violative of 12 C.F.R. § 226.8 (b)(5). Counsel's excellent brief notes numerous cases holding the lender liable for failure to disclose the ten-day limitation on attachment to after-acquired goods. Pollock v. General FinanceCorp., 535 F.2d 295 (5th Cir. 1976); Tinsman v. MolineBeneficial Finance Co., 531 F.2d 815 (7th Cir. 1976); In reDunne, 407 F. Supp. 308 (D.R.I. 1976); Johnson v. AssociatesFinance, Inc., 369 F. Supp. 1121 (S.D.Ill. 1974).
Public Finance in its well reasoned brief seeks to distinguish the above cited cases, adverse to its interest herein, by arguing that they were premised on an erroneous interpretation of Federal Reserve Board Letter 829, dated August 22, 1974. This contention may be put to rest by the following excerpt from Federal Reserve Board Letter No. 1053, dated May 28, 1976, by Jerauld C. Kluckman, Chief of the Truth In Lending Section.
 "It appears from your letter that these creditors are disclosing a security interest in `all after-acquired property' of `all after-acquired property including all attachments, substitutions, and replacements.' If, in fact, the applicable State law only permits acquisition of a security interest in after-acquired property acquired within a certain period of time, then such a statement would be improper under Regulation Z. As our previous letter indicates, a simple disclosure of the fact that after-acquired property may be subject to the security interest would be sufficient to comply with the clear language of § 226.8 (b)(5), without an explanation of the various conditions and limitations on such interests which may be imposed by the applicable State law. However, the fact that the creditor need not disclose such limitations and conditions does not mean that the creditor may affirmatively misstate the scope of the security interest, in disregard of those limitations. If, in fact, the creditor discloses an interest in `all after-acquired property,' when the interest would actually attach only to property acquired by the borrower within a certain period of time, such a disclosure would be inaccurate and misleasing in violation of Regulation Z." [Emphasis supplied.]
While the Board's staff letters do not carry the weight of law; nevertheless, great deference is due the Board's construction of its own regulations promulgated under its own authority. Johnson v. McCrackin-Sturman Ford, Inc.,527 F.2d 257 (3d Cir. 1975); Bone v. Hibernia Bank, 493 F.2d 135 (9th Cir. 1974); Philbeck v. Timmers Chevrolet, Inc., 499 F.2d 971
(5th Cir. 1974).
The claiming of a security interest in all "household goods, furniture, appliances, and personal property of all kinds and descriptions and all additions, replacements, and accessories thereto which are hereafter acquired by borrowers" by Public Finance clearly constitutes an affirmative misstatement of the security interest it retained.
Moreover, even absent Letter No. 1053, courts have held language similar to that in question violative of Regulation Z. See Pollock; Tinsman; In re Dunne; and Johnson, supra; andSneed v. Beneficial Finance Co. of Hawaii, 410 F. Supp. 1135
(D.Haw. 1976).
The crux of the court's rationale for holding the lender liable under these circumstances is quite simple. Claiming to obtain an interest in all after-acquired property fails to remotely approach disclosure of the accurate description of property subject to the lender's security interest required by the Regulation.
We point out that this decision does not require in every instance a disclosure by the lender that his security interest is limited to those consumer goods obtained by the debtor within ten days after the lender has given value. Rather, we limit our holding to the particular facts of this case. Here, the language contained in the promissory note constitutes an affirmative misstatement of the security interest retained by Public Finance.
It follows that the court erred in denying Ms. Irvin's motion for summary judgment on her counterclaim. *Page 815 
REVERSED AND REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.
WRIGHT, P.J., and BRADLEY, J., concur.