Leroy MASON and Gloria Mason

v.

GENERAL FINANCE CORPORATION OF VIRGINIA.

Civ. A. No. 74-0310-R.

United States District Court, E. D. Virginia, Richmond Division.

Sept. 15, 1975.

General Finance Corporation of Virginia, a Delaware corporation, in which they allege that the defendant has failed to make certain disclosures required by the Act, 15 U.S.C. 1601 *et seq.*, and implementing regulations, 12 C.F.R. § 226. They seek to recover the statutory civil penalty and their attorney's fees. Jurisdiction is conferred by 15 U.S.C. § 1640 (e) and 28 U.S.C. § 1337. The matter comes before the Court on plaintiffs' motion for summary judgment and defendant's cross-motion for summary judgment. Since the parties have submitted memoranda and agree that there are no material disputed facts, the motions are ripe for decision. Rule 56, Fed.R.Civ.P.

### I.

General Finance Corporation operates a small loan business in Richmond, Virginia, and is duly licensed under the Virginia Small Loan Act, § 6.1–244, *et seq.* of the Code of Virginia (1950). On July 24, 1973, the Masons entered into a consumer loan transaction in which they borrowed from General Finance $753.16 and promised to repay that sum along with a finance charge of $266.84 in thirty monthly installments of $34 each. On December 31, 1973, the Masons entered into a second transaction with General Finance whereby they borrowed $1,000 and then discharged in full the July loan. The new loan carried a finance charge of $339.21, exclusive of the $1,000 actually borrowed, and was to be repaid in thirty monthly installments —a first installment of $52.18 and twenty-nine of $44.38.

Leroy Mason affirmatively indicated by signature on the face of both consumer loan contracts that he wished to purchase credit life insurance and credit disability insurance.[1] The July contract

Louis A. Sherman, Neighborhood Legal Aid Soc., Inc., Richmond, Va., for plaintiffs.

Marvin F. Cole, Cole, Wells, Morano, Axselle & Johnson, Richmond, Va., for defendant.

### MEMORANDUM

MERHIGE, District Judge.

Leroy and Gloria Mason bring this Truth-in-Lending Act action against

---

1. By buying credit life, the insured initially insures his or her life for the amount of the indebtedness to the creditor, and, thereafter, assuming that payments are made which reduce the indebtedness, obtain coverage equal to the balance due on the unpaid indebtedness.

In case of the insured's death, then, the insurance policy is used to pay off the unpaid indebtedness.

In the eventually that the insured becomes "totally and permanently disabled" during the life of the policy "so as to be pre-

disclosed that such insurance would cost $25.50 and $40.80 respectively and the December contract disclosed a cost of $26.66 and $53.26 respectively. Gloria Mason did not purchase either credit life or credit disability insurance.

In May, 1974, when they still owed $957.27, Gloria and Leroy Mason ceased payment on the December 1973 transaction. They subsequently, on July 8, 1974, filed this action in which they charged defendant with several violations of the Truth-in-Lending Act and Federal Reserve Board Regulation Z, 12 C.F.R. § 226. General Finance in its answer denied that it had violated the Act or Regulation Z and counterclaimed against plaintiffs for the amount of the unpaid balance on the loan transaction with interest.

## II.

■ Congress passed the Truth-in Lending Act in order to "assure a reasonable disclosure of credit terms" so that consumers could make informed judgments on the comparative costs of consumer credit. 15 U.S.C. § 1601; *Powers v. Sims & Levin Realtors*, 396 F.Supp. 12 at 16 (E.D.Va., 1975). Consumer ignorance about the *real* costs of consumer credit, Congress found, tended to seriously undermine free competition in the consumer credit market and therefore contributed to economic de-stabilization. *Id.* Congress therefore determined that it could most effectively facilitate the free dissemination of comparative consumer credit information by legislating a full disclosure requirement which would enable the consumer "to compare more readily the various credit terms available to him [or her] and avoid the uninformed use of credit." 15 U.S.C. § 1601; *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356,

363–64, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1974).

■ Congress sought to promote the goal of full disclosure by requiring industry-wide standardization of credit terms and by strictly enforcing industry compliance with the complementary requirements of full disclosure and standardization of terms through a system of consumer remedies which embraced compensation for actual damages,[2] civil penalties,[3] attorney's fees,[4] and recision of consumer loan contracts in situations where the debtor gives the creditor a security interest in his residence.[5] Since the Act is remedial in nature, its requirements must be strictly enforced in order to promote the congressional goal of full disclosure. *Powers v. Sims & Levin Realtors, supra,* at 17.

## III.

Plaintiffs allege that defendant has violated the Act and Regulation Z in the following instances:

1. By failing to separate and identify with a clear and conspicuous heading certain disclosures, required by state law, which were inconsistent with the requirements of the Act, in violation of 12 C.F.R. § 226.6(b) and (c);

2. By failing to include the cost of credit life and credit disability insurance obtained by Leroy Mason in the finance charge disclosed to Gloria Mason; and

3. By failing to adequately disclose to plaintiffs the length of coverage of its non-required credit life and credit disability insurance.

A. Failure to Follow Format Prescribed by the Act For Disclosing Inconsistent State Law Requirements.

The Virginia Small Loan Act permits creditors to determine the cost of credit

---

vented from engaging in any occupation or performing any work," the credit disability insurance would be applied to the monthly loan payments during the period of disability.

2. 15 U.S.C. § 1640(a)(1).

3. 15 U.S.C. § 1640(a)(2)(A).

4. 15 U.S.C. § 1640(a)(3).

5. 15 U.S.C. § 1635(a).

as either a percentage per month of the unpaid balance or "in terms of dollars per one hundred dollars per year." 6.1–271 of the Code of Virginia (1950). Defendant used the percentage per month method of determining the cost of credit for both the July[6] and December[7] loan agreements and charged plaintiffs a "contract rate"[8] of 2½ per cent a month on the unpaid balance up to $300 and 1½ per cent a month on the unpaid balance above $300 on both loan agreements.[9] The Virginia Small Loan Act requires, furthermore, that the cost of credit be disclosed to consumers of credit, see 6.1–277, 282, and 284 of the Code of Virginia, and defendant disclosed the Virginia method for determining the cost of credit on the same disclosure statement utilized to disclose the Truth-in-Lending Act requirements.

■ When a creditor elects to disclose state law requirements that are inconsistent with Truth-in-Lending Act requirements, on the same statement used to disclose the requirements of the Act, it must follow a format prescribed by § 226.6(b) and (c)(2) of Regulation Z. Plaintiffs contend that the percentage per month method of determining the cost of credit is an inconsistent state requirement as defined by § 226.6(b) of Regulation Z[10] and that defendant has violated § 226.6(c)(2)[11] in improperly disclosing this alleged inconsistent state requirement. Plaintiffs' contention resolves itself into two questions which the Court will discuss *seriatim:* (1) whether the Virginia method of determining the cost of credit is inconsistent with the requirements of the Act, and, if so, (2) whether the defendant has failed to adhere to the format prescribed by the Act in disclosing the inconsistent state requirement.

### 1. The Definition of an Inconsistent State Law Requirement.

Virginia law, as noted above, requires that the cost of credit be determined and disclosed as a percentage per month of the unpaid balance. The Court first considers whether utilizing a monthly percentage method of determining the cost of credit and describing that method of determination as a "contract rate" or "agreed rate of charge" is inconsistent with the requirement of the Act and Regulation Z that standardized terminology—"finance charge"[12] and "annual percentage rate"[13]—be used to describe the cost of credit and that the "finance charge" and the "annual percentage rate" be determined in accordance with procedures provided by Regulation Z.[14]

Regulation Z provides the standard for determining whether a state requirement is inconsistent. Section 226.6(b) of Regulation Z states that a state requirement is inconsistent with federal law when it:

(1) Requires a creditor to make disclosures different from the requirements of this part with respect to

---

6. See Appendix A.

7. See Appendix B.

8. Defendant uses the terms "contract rate" and "agreed rate of charge" interchangeably in both the July and December loan agreements to refer to the percentage per month method of computing the cost of credit. This varying terminology appears confusing and misleading in violation of 12 C.F.R. § 226.6 (c), but since plaintiffs have not pressed the point, the Court expresses no opinion on the question.

9. Since defendant used exactly similar standardized loan forms for both the July and December loan agreements and since plain-

tiffs' contentions are applicable to both loan agreements, the Court will use the term "loan agreement" to refer, except where otherwise specified, to both agreements.

10. See note 16, *infra.*

11. See note 17, *infra.*

12. See 15 U.S.C. § 1639(a)(4); 12 C.F.R. § 226.8(d)(3).

13. See 15 U.S.C. § 1639(a)(5); 12 C.F.R. § 226.8(b)(2).

14. See 12 C.F.R. § 226.4 ("Determination of finance charge"); 12 C.F.R. § 226.5 ("Determination of annual percentage rate").

form, content, terminology, or time of delivery;

(2) Requires disclosure of the amount of the finance charge determined in any manner other than that prescribed in § 226.4; or

(3) Requires disclosure of the annual percentage rate of the finance charge determined in any manner other than that prescribed in § 226.5.

■ Inconsistency is demonstrated under § 226.6(b)(1) because disclosure of the cost of credit as a monthly percentage rate and describing that method of determination as the "contract rate" or "agreed rate of charge" differs with respect to both terminology and content from disclosure of the cost of credit as a "finance charge" and an "annual percentage rate." First, the terminology "contract rate" and "agreed rate of charge" is facially different from the terminology employed by the Act to describe the cost of credit—"finance charge" and "annual percentage rate"— and is therefore inconsistent under § 226.6(b)(1).

Second, the Court, after analyzing the conflicting terminology, finds the *content* of the state method of determination—the cost of credit computed as a monthly percentage—to be different from the content of the terminology required by Regulation Z. Regulation Z mandates that the cost of credit be expressed as both a sum, the "finance charge," and as a yearly percentage, the "annual percentage rate." Regulation Z defines the "finance charge"[15] as the "sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit."[16] The "finance charge" includes not only the sum of all interest charges, but also service charges, transaction charges, activity charges, carrying charges, loan fees, finders fees, appraisal fees, investigation fees, credit reports, and in some circumstances, insurance premiums. By con-

15. Defendant in its loan agreement erroneously defines the "finance charge" as the "approximate amount which would be earned for payment of Amount Financed (Principal) according to schedule at the contract rate of Finance Charge." Loan Agreement at 2.

16. Section 226.4(a) of Regulation Z reads in full:

(a) General rule. Except as otherwise provided in this section, the amount of finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer, and imposed directly or indirectly by the creditor as an incident to or as a condition of the extension of credit, whether paid or payable by the customer, the seller, or any other person on behalf of the customer to the creditor or to a third party, including any of the following types of charges:

(1) Interest, time price differential, and any amount payable under a discount or other system of additional charges.

(2) Service, transaction, activity, or carrying charge.

(3) Loan fee, points, finder's fee, or similar charge.

(4) Fee for an appraisal, investigation, or credit report.

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring any such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

(6) Charges or premiums for insurance, written in connection with any credit transaction, against loss of or damage to property or against liability arising out of the ownership of use of property, unless a clear, conspicuous, and specific statement in writing is furnished by the creditor to the customer setting forth the cost of the insurance if obtained from or through the creditor and stating that the customer may choose the person through which the insurance is to be obtained.

(7) Premium or other charge for any other guarantee or insurance protecting the creditor against the customer's default or other credit loss.

trast, the defendant's terminology—whether "contract rate" or "agreed rate of charge"—describes the cost of credit as a monthly percentage, not as the "sum of all charges." The cost of credit expressed as a percentage has different content than the cost of credit expressed as a sum and, even if the monthly percentages could be reduced to a sum and then totaled, that sum would still not necessarily equal the finance charge because the sum of the interest charges is, as defendant recognizes, just one component of the finance charge.

In addition, the cost of credit expressed as a monthly percentage differs in content from the cost of credit expressed as an "annual percentage rate," and the Virginia method of determining the cost of credit is, for that reason also, inconsistent within the meaning of § 226.6(b)(1) and § 226.6(b)(3). Indeed, defendant has admitted as much because it stated in its disclosure statement that "[t]he Annual Percentage Rate, when computed by the actuarial method for payment according to schedule, would yield the Finance Charge, but it is not the contract rate."

■■ The Court concludes, upon its examination of § 226.6(b) in its entirety, that whenever state law requires the determination of the cost of credit in any manner other than that required by the Act, the state requirement is inconsistent and must be disclosed in accordance with § 226.6(c)(2) of Regulation Z. There is a persuasive policy reason for reaching this result because disclosure of the cost of credit is, perhaps, the most meaningful and valuable disclosure required by the Act. *See Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 362–368, 93 S.Ct. 1652, 36 L. Ed.2d 318 (1973). Full disclosure of the cost of credit enables consumers to make informed judgments about the comparative costs of credit. 15 U.S.C. § 1601; *Powers v. Sims & Levin,* 396 F.Supp. at 16. Disclosure by creditors of inconsistent state requirements, without clearly labeling them as such, may have the effect of confusing or misleading consumers about the comparative cost of credit. When consumers are confused about the comparitive cost of credit, the dominant purpose of the Act is undermined, and the Court must therefore construe and strictly enforce the "inconsistency" prohibition of the Act.

2. Format for Disclosure of Inconsistent State Law Requirements.

■ Having concluded that defendant disclosed state law requirements inconsistent with the requirements of the Act, the Court now moves to the question whether defendant adhered to the format prescribed by the Act in disclosing inconsistent state law requirements. When a creditor discloses inconsistent requirements, it must (1) clearly and conspicuously label with a heading the Truth-in-Lending Act disclosures; and (2) place the Truth-in-Lending Act disclosures above and separate from the state law disclosures; and (3) clearly and conspicuously indicate with a heading that the state law disclosures are inconsistent with the Truth-in-Lending Act disclosures. 12 C.F.R. § 226.6(c)(2).[17] Defendant's disclosure statement

17. 12 C.F.R. § 226.6(c)(2) reads in pertinent part:

. . . Any creditor who elects to make disclosures specified in any provision of state law which, under paragraph (b) of this section is inconsistent with the requirements of the act and this part may

\* \* \*

(2) Make such inconsistent disclosures on the same statement on which disclosures required by this part are made; provided:

(i) All disclosures required by this part appear separately and above any other disclosures,

(ii) Disclosures required by this part are identified by a clear and conspicious heading indicating that they are made in compliance with Federal law, and

(iii) All inconsistent disclosures appear separately and below a conspicuous demarcation line, and are identified by a clear and conspicious heading indicating that the statements made thereafter are inconsistent with the disclosure requirements of the Federal Truth in Lending Act.

fails to comply with Regulation Z in two respects. Although the Truth-in-Lending Act disclosures have been placed above and separate from defendant's disclosure of the "Agreed Rate of Charge," defendant has failed (1) to clearly and conspicuously label the Truth-in-Lending Act disclosures as such and has, furthermore, failed (2) to indicate with a clear and conspicuous heading that the "Agreed Rate of Charge" is a state law disclosure requirement which is inconsistent with the requirements of the Act. See Appendices A and B. Since the defendant has failed to follow the prescribed format in disclosing an inconsistent state law requirement on both loan agreements, the Court must enter judgment for each plaintiff and allow both Leroy and Gloria Mason to recover a civil penalty on each loan agreement. *Walker v. College Toyota, Inc.*, 519 F.2d 447 (4th Cir., 1975) (Per Curiam).

B. Failure to Include the Cost of Credit Insurance Obtained by Leroy Mason in the Amount of Finance Charge Disclosed to Gloria Mason.

Leroy Mason affirmatively elected the optional credit life and credit disability insurance provided by General Finance; Gloria Mason did not. It is the "general rule" that charges for insurance coverage "written in connection with any credit transaction" be included in the finance charge disclosed to the consumer. 15 U.S.C. § 1605(b); 12 C.F.R. § 226.-4(a)(5). A creditor need not include the cost of credit insurance coverage in the finance charge and its derivative, the "annual percentage rate," however, when (1) coverage is not a prerequisite for obtaining credit; (2) the optionality of the coverage is disclosed conspicuously in writing to the consumer; and (3) coverage can only be obtained by the consumer's giving "affirmative written indication of his [or her] desire to do so after written disclosure to the consumer of the cost of obtaining credit insurance." 15 U.S.C. § 1605(b)(1) and (2); 12 C.F.R. § 226.4(a)(5)(i) and (ii).

■ General Finance did not include the cost of credit insurance in the finance charge. With respect to Leroy Mason, there is no doubt that defendant was excused from complying with the "general rule" because it (1) disclosed conspicuously in writing that insurance coverage was not a prerequisite for obtaining a loan; (2) disclosed the cost of obtaining both credit life and disability insurance, and (3) provided a format whereby the consumer would have to affirmatively opt for credit insurance before obtaining it.

Gloria Mason contends, however, that her failure to elect credit insurance coverage carries certain Truth-in-Lending Act consequences for defendant. She argues that because she, by co-signing the note, obligated herself on the entire amount of each loan, including the cost of Leroy's credit insurance, and because defendant failed to include the cost of Leroy's insurance coverage in the finance charge disclosed to her, defendant has violated the Act by understating both the "finance charge" and "annual percentage rate" charged her. Stated another way, Gloria Mason raises the question whether a creditor, when it extends credit to both an insured co-obligor and an uninsured co-obligor and is excused by the Act and Regulation Z from including the cost of credit in the finance charge disclosed to the insured, nevertheless incurs Truth-in-Lending Act liability to the uninsured co-obligor because it did not recompute the "finance charge" and "annual percentage rate" to reflect the asserted increased cost of credit to the uninsured co-obligor.

■ The Court concludes, however, that liability is not compelled by either the literal language of the Act and Regulation or by the policies underlying the Act.

First, § 1605 of the Act and § 226.4 (a)(5)(i) and (2) do not provide a basis for creditor liability to the uninsured co-obligor. They merely state the conditions which must first obtain before the

creditor is excused from including the cost of insurance in the finance charge of the insured Debtor. Gloria Mason could only argue § 1605(b) and 12 C.F.R. § 226.4(a)(5) as a basis for liability if defendant had written insurance on *her* life or *her* health and then, without having first complied with § 1605(b) and § 226.4(a)(5), had failed to include the cost of insurance coverage in the finance charge. Since Gloria Mason was not charged for credit insurance written to insure *her* life or health, she is not protected by the literal wording of the statute and accompanying regulation. Gloria is, indeed, obligated to pay the cost of Leroy's credit insurance should he default on his obligation, but the Act and Regulation Z do not expressly require the creditor to recompute the finance charge disclosed to the uninsured co-obligor.

Second, co-obligors on a small loan are typically a husband and wife, such as in the instant case, and when only one spouse is working, the co-obligors will find it necessary to insure only the working spouse. The co-obligors will be primarily interested in the cost of credit for the family unit. If Gloria Mason's argument were accepted by the Court, however, creditors would be obliged, in circumstances like the instant case, to give co-obligors disclosure statements which revealed different "amounts of finance charge" and different "annual percentage rates" for each. Disclosure statements which reveal different costs of credit for the same transaction, the Court believes, would have the effect of confusing and misleading consumers and would make it more difficult for consumers to make informed judgments about the comparative cost of credit. Given that Congress legislated the disclosure and standardization requirements of the Act "to enable the consumers to compare more readily the various credit terms available to him [or her] and avoid the uninformed use of credit,"[18]

the Court declines plaintiff's invitation to find in the interstices of the Act a creditor requirement that will have the effect of misleading consumers and making comparison shopping more difficult.

The Act spells out with conciseness and particularity the obligations and duties of creditors with respect to the full disclosure of the cost of credit and the use of standardized terms. The Court has no hesitancy in enforcing the obligations and duties of creditors where those obligations and duties are clearly enumerated by the Act and Regulation Z. Strict construction and strict enforcement promote the remedial purposes of the Act. *Powers v. Sims & Levin,* *supra,* at 17. The Court is, however, of the view that no substantial remedial purpose would be served and that a grave injustice would be done, if creditors were to be penalized for violations of the Act in situations where they had been given no clear guidance as to what the Act required.

The Court shall, accordingly, enter summary judgment for the defendant on Gloria Mason's insurance claim.

C. Failure to Disclose the Length of Coverage of Credit Insurance Obtained by Leroy Mason.

Plaintiffs finally complain that defendant, in violation of the Act, has failed to adequately disclose the cost of optional credit life and credit disability insurance. The disclosure statement reveals the cost of credit life and credit disability insurance to be $25.50 and $40.80, respectively, for the July loan and $26.66 and $53.26 for the December loan. Plaintiffs argue that these disclosures were misleading because defendant failed to disclose the length of coverage of the policies. Without knowledge of the length of coverage, they contend, consumers cannot intelligently determine the cost to them of such coverage.[19]

---

18. 15 U.S.C. § 1601.

19. Plaintiffs' allegation that General Finance has violated the Act because it did not total the cost of credit life and credit disability insurance is without merit. Neither the Act nor Regulation Z requires the addition of the two insurance charges here in question.

Plaintiffs' argument has superficial attractiveness and might be dispositive were it not for the fact that the insurance was written for the full term of the credit obligation. When credit insurance is written for the full term of the obligation, the debtor can, of course, make meaningful decisions about the comparative cost of the insurance. Only when the term of insurance does not correspond to the term of the credit obligation will the consumer be concerned about being misled about the real cost of obtaining credit insurance. See *Philbeck v. Timmers Chevrolet Inc.*, 499 F.2d 971, 981 (5th Cir. 1974). Without engaging in any further discussion on the matter, the Court concludes for the reasons stated by Judge Turk in *Doggett v. Ritter Finance Company of Louisa*, 384 F.Supp. 150 (W.D.Va.1974) and by Judge Ainsworth in *Philbeck v. Timmers Chevrolet, supra,* that disclosure of the term of coverage of optional credit life and credit disability insurance, which is written for the full term of the credit obligation, is not required by the Act or Regulation Z.

## IV.

### A. Civil Penalties.

Having established, as a matter of law, that defendant has violated the disclosure requirements of the Act and Regulation Z by improperly labeling and displaying an inconsistent state requirement on both the July and December disclosure statements, plaintiffs are entitled to recover a civil penalty for each violation. 15 U.S.C. § 1640(a)(2); *Walker v. College Toyota, Inc., supra,* 519 F.2d 447 (4th Cir., 1975) (per curiam); *Powers v. Sims & Levin, supra,* at 23–24. The only question remaining is whether they may *each* recover a civil penalty for *both* the July and December violations, or whether they are limited to a single recovery on the July transaction and a single recovery on the December transaction.

The Court concludes from its reading of the Act, applicable regulations, and relevant case law, that Leroy and Gloria Mason may *each* recover a civil penalty on both the July and December violations. *Powers v. Sims & Levin, supra,* at 23–24; *Simmons v. American Budget Plan*, 386 F.Supp. 194, 201 (E.D.La.1974). 15 U.S.C. § 1640 (a)(2)(A) provides that "any creditor" who violates a disclosure duty to "any person" is liable to "such person" for the civil penalty. Even though General Finance was only required to furnish the Masons with one disclosure statement for the July loan agreement and one disclosure statement for the December loan agreement, 15 U.S.C. § 1631(b); 12 C.F.R. § 226.6(e), the defendant, nevertheless, had a Truth-in-Lending Act duty to make the requisite disclosures to both Leroy and Gloria Mason because, under the loan agreement, *each* obtained credit. 15 U.S.C. § 1631(a). Since General Finance was required to make Truth-in-Lending Act disclosures to both Leroy and Gloria Mason on the July and December loan agreements and since it violated the disclosure requirement of the Act with respect to both transactions, Leroy and Gloria Mason may *each* recover a civil penalty for *each* of the two transactions.

The Act permits the injured debtor to recover "twice the amount of any finance charge in connection with the transaction," but places a floor of $100 and a ceiling of $1,000 on the amount of recovery.[20] Since the finance charge for the two transactions was $266.84 (July) and $339.21 (December), each plaintiff shall recover a civil penalty of $533.68 for defendant's Truth-in-Lending Act violation of the July loan agreement and a civil penalty of $678.42 for defendant's Truth-in-Lending Act violation of the December loan agreement. In sum, plaintiffs may each recover $1,212.10 from the defendant in civil penalties.

Furthermore, since the plaintiffs have raised no defense to defendant's counterclaim, the Court shall enter judgment

20. 15 U.S.C. § 1640(a)(2)(A).

for the defendant on its counterclaim in the amount of $957.25 with interest from May 22, 1974, in the amount of 2½% a month on the unpaid balance up to Three Hundred ($300.00) Dollars.

### B. Attorney's Fees.

Because they have successfully enforced the disclosure requirements of the Act, each plaintiff is entitled to recover costs and attorney's fees. 15 U.S.C. § 1640(a)(3); *Powers v. Sims & Levin, supra,* at 27. The Court, as per its usual procedure, shall direct respective counsel to meet and confer and explore the possibilities of reaching agreement on reasonable attorney's fees. If counsel cannot within ten days of the date of entry of this memorandum and accompanying order reach agreement on reasonable attorney's fees, counsel for the plaintiffs is directed to submit a statement of cost and time spent litigating this action and the Court, after giving defendant an opportunity to be heard, will award costs and reasonable attorney's fees in such amount as it deems proper.

An appropriate order shall enter.