DAVID A. MILLIGAN, Appellant, vs. JESSE MILLER, JR., et al. Appellees.

*Opinion filed February 23, 1912—Rehearing denied April 3, 1912.*

1. ESTOPPEL—*fraudulent intention not essential to doctrine of estoppel.* A fraudulent intention is not essential to the doctrine of estoppel, and it is enough if a fraudulent effect would follow if a party were allowed to set up a claim inconsistent with his former declarations and conduct.

2. SAME—*an estoppel may arise from silence as well as from words.* Estoppel may arise from silence as well as words where there is a duty to speak and the party upon whom the duty rests has an opportunity to speak, but, knowing the facts, keeps silent.

3. SAME—*party seeing another about to infringe his right should assert it.* It is the duty of a person having a right, to assert the same when he sees another about to commit an act infringing such right, and he cannot, by his silence, induce or encourage the commission of the act and then be heard to complain.

4. SAME—*when owner of land is estopped to complain that he was not made party to road proceeding.* One who owns land under an unrecorded deed from his father is estopped to complain that he was not made a party to a proceeding to open a road through the land, where he knew the commissioners were deceived by the records in making his father a party but made no disclosure of the facts, though having frequent opportunity to do so.

5. NOTICE—*when party in possession by tenant must assert his title.* Where one owning land in possession of a tenant conveys the land to his son by a deed which is not put on record, and the land remains in possession of the tenant, the father continuing to act as landlord and agent, there is no such outward change of ownership as relieves the son of the duty of asserting his ownership when he sees that highway commissioners, in proceeding to open a road, have been deceived by the records into the belief that the ownership of the land is in the father.

APPEAL from the Circuit Court of Shelby county; the Hon. THOMAS M. JETT, Judge, presiding.

WILLIAM H. RAGAN, and GEORGE B. RHOADS, for appellant.

RICHARDSON & WHITAKER, for appellees.

Per CURIAM: The appellant sued the appellees in trespass and appealed from a judgment in their favor to the Appellate Court, which transferred the cause here because a freehold was involved.

The appellees are commissioners of highways of four townships in Shelby county which meet at one corner. A petition was presented to them in September, 1905, for the laying out of a highway on the dividing line between two of the townships on the north and two on the south, and such proceedings were had that upon an appeal to three supervisors a final order was made for the laying out of the highway and was filed in the several township clerks' offices. Proceedings were taken for the assessment of damages, the amounts assessed were tendered, notice to remove fences was served, and on June 25, 1907, the fence on the south side of the south-east forty acres of Shelbyville township was removed by the appellees. The suit was for damages caused by the removal of that fence. The defendants justified as commissioners under the order establishing the road.

David A. Milligan, the appellant, is a lawyer, living at Shelbyville. David Y. Milligan, his father, is a farmer, who owned the forty acres mentioned and lived near. In 1902 he conveyed that forty to his son, reserving a life estate. The deed was not put on record until after this suit was begun and the father and son succeeded in deceiving the commissioners as to the title, so that no notice was ever served upon the appellant or damages allowed to him or attempt made to settle with him but his father was throughout the proceedings treated as the owner of the land. Soon after this deed was made the father gave the plaintiff the possession of the land, and says that he verbally released the life estate reserved in the deed. This intended release was ineffectual, and the father continued to be the owner of a life estate in the premises. He was therefore properly made a party to the proceeding to lay

out the road and assess the damages. The appellant, who owned the remainder, was not named in the petition for the road or any of the proceedings to lay it out and assess damages to the owners, as an owner of land. For the purpose of this case we think it must be held that there was no lack of jurisdiction in the commissioners and supervisors, and no such irregularity as would authorize a recovery by appellant upon the ground that the proceeding to lay out the road was invalid in any other respect than that he was not made a party and his damages assessed. His right to recover on that ground is denied by appellees, because, it is alleged, he is estopped by his own conduct, together with that of his father, who, it is claimed, represented appellant in looking after the land. The land has been, during all the time it was owned by appellant and his father, in the possession of tenants. Appellant and his father testified the father turned his possession over to appellant in the spring of 1903. This change of possession was not manifested by any changed appearances, as the land continued in the occupancy of tenants, but after that time it is claimed they were the tenants of appellant instead of his father, and the leases were made by appellant and rent accounted for to him.

For the purpose of ascertaining who were owners of the lands over which the proposed road was to be laid out and making them parties to the proceedings the records in the recorder's office were examined. The title of record was in David Y. Milligan, appellant's father. David Y. Milligan testified he had acted as landlord, under appellant's directions, from the time the deed was made to the time he testified on the trial; that sometimes appellant paid him for his services and sometimes rendered services for the witness which offset services the witness rendered, as agent for appellant, in looking after the land. Several of the commissioners of highways testified that when they met to examine the route of the proposed road David Y. Milli-

gan was present; that he spoke of the land as his, and claimed the proposed road, if laid out, would damage him $1200.

When the supervisors summoned to hear the appeal had decided to grant the road they called on David Y. Milligan to talk with him about the damages on account of taking a part of the forty acres for the road and endeavored to agree with him upon the amount. They told him they had agreed with the other land owners who were damaged and had come to try to agree with him. Milligan declined to do business with them and asked them to show their credentials. One of them showed him a copy of the summons that had been served upon them, and he then wanted them to prove they were the men they represented themselves to be. The supervisors told him if they could not agree on the damages they would have to call a jury to assess the amount. Milligan replied, "Squire Johnson told me Saturday that you fellows were coming to give me $40 an acre for my land," and said he did not want to do any business with the supervisors. Appellant was not present on any of these occasions and had no talk with the commissioners about the road prior to the final order establishing it, and the assessment of damages to his father, by jury, for taking a part of the land which appellant owned in fee, subject to a life estate in his father.

On the 17th of April, 1907, a notice, signed by all but one of the commissioners of highways of the four townships, was served upon David Y. Milligan to remove his fences from the road as laid out by order of the three supervisors. Said notice also informed Milligan that $400 damages assessed in his favor was in the hands of justice of the peace W. E. Lowe. On the same day that notice was served, as we understand it,—at all events before the alleged trespasses were committed,—several of the appellees called on the appellant at his office in Shelbyville and tendered him the amount of the damages that had been as-

sessed to his father. The tender was made to him as attorney and agent for his father. He admitted he was such agent and attorney for his father but refused to accept the money, and stated he had no authority to do so. He gave no other reason for refusing to accept the money and at no time stated or disclosed to appellees that he owned the land, and made no claim to them that the damages had not been assessed to the proper party or that his father was not the sole owner of the land. On June 25, 1907, the fence not having been removed, appellees entered on the land, tore down and removed the fence. This suit was brought the following day.

It is a justifiable inference from the evidence that appellant and his father were in collusion for the purpose of concealing from appellees appellant's interest in the land. They knew appellant's title was based upon an unrecorded deed, and must have known David Y. Milligan was named in the road proceedings as owner of the land because he appeared to be so from the records. David Y. Milligan acted as agent or landlord of it for appellant up to the time of the trial. He was hostile to laying out the road, spoke of the land as his and claimed he would be damaged in a large sum. If he had at any time informed the commissioners or the supervisors of the true state of the title, it is not to be presumed they would have gone ahead to force the laying out and opening the road without regard to the rights of appellant. No one testified that appellant knew of the proceedings to lay out the road while they were being carried on, nor did anyone testify that he did not know of the proceedings. It would seem incredible that he did not know of them. In fact, we think it reasonably certain from all the evidence that he must have known of them. He lived in Shelbyville, in the same township wherein the land was located and but a short distance from it. Public notice was given of the meeting of the commissioners to hear reasons for and against laying out the road.

David Y. Milligan was present at that meeting. When three supervisors were summoned to hear the appeal and failed to agree with David Y. Milligan on the damages they caused a jury to be summoned, and a hearing was had to determine how much damage would be caused by taking the land proposed. David Y. Milligan was summoned, as the owner of the land, to appear at the hearing. It would seem impossible that all these proceedings should take place and the appellant not know what was going on. When the money was tendered him for his father he did not pretend ignorance of the proceedings but contented himself with saying he had no authority to accept it. It would have been an easy matter, and under the facts disclosed by this record we hold it was their duty, for appellant and his father to inform the commissioners of the state of the title. When they went to appellant to tender him, as attorney and agent for his father, the damages assessed, the trespass complained of had not been committed, and if he had then told them his father owned only a life estate in the land and that he was the owner, by an unrecorded deed, of the remainder in fee, and they had then gone ahead and committed the acts complained of, his position might have been entirely different. He knew the true state of the title and he knew the commissioners did not know it. He knew they were ignorant of his unrecorded deed,—that they believed the land to be his father's and proposed to enter upon it and open the road. By his silence when he should have spoken the commissioners were led to do the acts he now complains of and for which he seeks to mulct them in damages. We think he is estopped upon sound legal principles and principles of right and justice. It is true, appellant originally did nothing to induce the commissioners to omit making him a party to the road proceeding, and if his title had been of record he might have owed them no duty to inform them of his interest, but he knew the title of record was in his father and must

have known the commissioners were misled by that fact. Whether so intended or not, appellant's silence when he should have spoken operated as a fraud upon appellees. A fraudulent intention is not essential to the doctrine of estoppel. It is enough if a fraudulent effect would follow allowing a party to set up a claim inconsistent with his former declarations or conduct. Estoppel may arise from silence as well as words where there is a duty to speak and the party on whom the duty rests has an opportunity to speak, and, knowing the circumstances, keeps silent. (*Thompson* v. *Simpson,* [N. Y.] 28 N. E. Rep. 627.) It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. He cannot by his silence induce or encourage the commission of the act and then be heard to complain. (11 Am. & Eng. Ency. of Law,—2d ed.—427-429; 16 Cyc. 771, 796.) The general rule is, that possession under an unrecorded deed is notice to all the world, but under the facts and circumstances of this case appellant was not relieved of the duty to speak because he was in possession of the land by tenant. There is nothing in the evidence that would indicate to the public that the party in possession was not the tenant of David Y. Milligan but was the tenant of appellant. The land appears to have been in possession of a tenant all the time it was owned by David Y. Milligan. It so continued to be occupied by a tenant after the conveyance to appellant, and David Y. Milligan continued, he says, to act as landlord and agent for it. So far as the public could see, there was no change after the conveyance to appellant.

We have considered the complaints made of the rulings of the court in the admission of evidence and giving and refusing instructions. In the view we take of this case there was no error in the admission of evidence. While we cannot say the court's rulings in giving and refusing instructions are entirely free from error, they are free from

errors so prejudicial to appellant as to justify a reversal of the judgment.

A consideration of the whole record satisfies us the judgment was right, and it is affirmed.

*Judgment affirmed.*