FIRST SAVINGS & LOAN ASSOCIATION OF BUREAU COUNTY, Plaintiff-Appellee and Cross-Appellant, v. ROBERT H. KERN et al., Defendants-Appellants and Cross-Appellees.

Third District   No. 77-182

Opinion filed December 27, 1977.

Donald E. Blodgett, of Blodgett & Reese, of Rock Falls, for appellants.

Louis J. Perona, of Perona and Perona, of Spring Valley, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the circuit court of Bureau County which entered a judgment of foreclosure for the plaintiff, First Savings & Loan Association of Bureau County, and against the defendants, Robert H. Kern and Loretta H. Kern, on two mortgages executed by the defendants in favor of the plaintiff. Both the plaintiff and the defendants have filed cross appeals, the subject of which we will disclose as we determine the issues raised in this appeal.

On March 26, 1971, the defendants borrowed the sum of $27,300 from the plaintiff and in addition to executing a note to the plaintiff they secured their loan by executing and delivering to the plaintiff a mortgage on their residence.

On July 16, 1971, the defendants borrowed the sum of $75,000 from the plaintiff. They again executed a note and secured their loan by executing and delivering a mortgage to the plaintiff on property used for a garage and car sales.

At the time each of these loans was consummated the plaintiff furnished the defendants with a "Truth in Lending Statement." Each of these statements provided that in addition to the interest called for in the notes a late charge of 5% of the monthly payment would be charged to the defendants on each account if said account was delinquent 14 days.

Both of the loans to the defendants became delinquent and on March 5, 1976, the plaintiff instituted foreclosure proceedings. In the complaint for foreclosure it was alleged that the balance due on the residential property was $24,493.99 and on the garage property the balance due was $58,101.27. During the foreclosure hearing the plaintiff amended the complaint for foreclosure by interlineation in that it raised the amount due on the residential property to $38,487.74 and the garage property to the sum of $115,883.78.

The amounts claimed in the foreclosure complaint prior to its being amended were computed upon the books and records of the plaintiff plus a late charge of 5% of the delinquent installment payments. The increased amounts which were claimed by the plaintiff were predicated upon a penalty interest provision in each of the notes. As to the note pertaining to the residence, the penalty interest was to be in the amount of 8%, and as to the note pertaining to the garage the penalty interest was to be in the amount of 10%.

In its decree of foreclosure entered on January 4, 1977, the trial court found a balance due on the residential loan to be in the sum of $25,629.16 and allowed attorney fees of $1,921.45. As to the garage loan, the sum of $116,883.73 was found to be due plus attorney fees of $5,146.51.

The complaint for foreclosure contained one count which requested reformation of one of the two mortgages executed by the defendants. The reformation was sought because of a misdescription of the real property involved. The trial court allowed reformation and no appeal is taken from that decision.

In this appeal the defendants contend that the calculation of the trial court as to the amount due and owing on the garage or business property loan was erroneous and if such amount was in fact erroneous the attorney fees allowed by the trial court for the foreclosure of this amount should be reduced. The plaintiff in this appeal quarrels not with the trial court's calculation of the balance due on the business loan but cross-appeals and contends that the trial court should have permitted a larger recovery as the balance due and owing on the residence loan.

In attempting to compute the amount due and owing on each of the mortgages the plaintiff attempted to invoke the provisions of a statutory enactment of the Illinois Savings and Loan Act, to-wit, section 4—16(b) (Ill. Rev. Stat. 1971, ch. 32, par. 776(b)), which provides:

> "The association's by-laws may provide for a charge or penalty for the non-payment when due, of agreed payments on capital accounts, and of installments, interests, or premiums on loans; but no such charge or penalty shall exceed the sum of two cents (2¢) per dollar of the amount payable in any one month, and no such charge or penalty shall be either compounded or cumulated. However, if a loan has been predicated on a membership entitling the borrowing member to a vote of one share, no such charge or penalty shall exceed the sum of five cents (5¢) per month per dollar of the amount payable, or in lieu thereof such further interest charge as may be provided in the loan contract."

In examining the record we find that the defendants were members of the plaintiff savings and loan association. Introduced into evidence were the applications for membership by each of the defendants and we further note that neither defendant ever denied that they were members. Mere membership standing alone, however, is not sufficient to invoke or activate the specific penalty provisions for nonpayment of a loan as provided for in section 4—16(b) (Ill. Rev. Stat. 1971, ch. 32, par. 776(b)). A further requisite which must be met before such penalties can be assessed against a borrower is a provision in its bylaws which authorizes the imposition of the penalties as set forth in section 4—16(b) (Ill. Rev. Stat. 1971, ch. 32, par. 776(b)). The plaintiff admitted that it did not have in effect a provision in its bylaws as required by statute. Such a provision being absent in the plaintiff's bylaws, the plaintiff contends that the proper method of calculating the amount due on the residence loan is the amount of unpaid principal on this loan plus primary interest to be paid as set forth in the note, to-wit, 7¾%, plus additional interest in the amount of 8% which is provided for on the face of the note in the event of default and acceleration. The plaintiff bases this contention on the language found in section 4—16(b) (Ill. Rev. Stat. 1971, ch. 32, par. 776(b)), which pertains to penalty charges for nonpayment where the savings and loan association has not provided for the same in its bylaws. Such language relied upon by the plaintiff is as follows:

> " * * * [O]r in lieu thereof such further interest charge as may be provided in the loan contract."

The plaintiff's contention is not well taken for the following reasons. The transaction as to the residence loan is governed by the truth in lending law and its accompanying Regulation Z. The plaintiff complied with the truth

in lending law (12 C.F.R. §226.8(b)(4) (1977)), by providing on a separate sheet to the defendants a financial disclosure statement known as Regulation Z. One of the specific disclosures required is:

"(4) The amount or method of computing the amount of any default, delinquency, or similar charges payable in the event of late payments." 12 C.F.R. §226.8(b)(4) (1977).

In compliance with this regulation the plaintiff disclosed to the defendants that:

"A late charge of 5% of the monthly payment will be charged to all accounts 14 days or more delinquent."

■█ The trial court in a memorandum opinion held that the provisions in the Federal Reserve Regulation Z which was given to the defendants and which pertained to the assessment of a late charge for delinquent accounts estopped the plaintiff from demanding the larger payment which was set forth in the note. We agree with the trial court. The plaintiff was required by law to provide the defendants with a financial disclosure statement as to the residential loan. This statement is required by law and is known as Regulation Z. (See 15 U.S.C. §1601 *et seq.* (1970).) The purpose of such requirement is to enhance economic stabilization and competition among the various financial institutions engaged in the extension of consumer credit. It is a further purpose of such requirement to assure a meaningful disclosure of credit terms to the consumer so as to protect the consumer against inaccurate and unfair credit billing. It should be noted that the financial disclosure statement (Regulation Z) is to be prepared by the lender.

■█ As a general principle all ambiguities in disclosure instrument should be construed against lender not only as one upon whom burden of compliance lies, but also as one who drafted the disclosure statement. (See *Sneed v. Beneficial Finance Co.* (D. Haw. 1976), 410 F. Supp. 1135.) While in the instant case we do not have an ambiguity on the face of the disclosure statement, the above cited case illustrates that in construing the disclosure regulation the burden of proving compliance is on the lender. The applicable provision (15 U.S.C. §1601 *et seq.* (consumer credit cost disclosure)) is remedial in nature and its requirements must be strictly enforced to afford consumers of credit the expansive protection envisioned by Congress. See *Powers v. Sims & Levin Realtors* (E.O. Va. 1975), 396 F. Supp. 12.

The defendants had every right to rely upon the disclosure statement (Regulation Z) which was prepared by and submitted to them by the plaintiff. This statement embodied all the information pertaining to the residence loan, *i.e.,* appraisal fee, credit report fee, attorney fees, association fees, annual interest rate, number of payments to be made, amount of payments, principal amount borrowed, security interest of

lender, late payment charges, prepayment penalty, and whether or not insurance coverage for the loan was in force. The very purpose of the Regulation Z requirement, being a meaningful disclosure of credit terms, would be nullified if plaintiff's contentions were to prevail in that the borrower could look behind the financial disclosure statement for a higher penalty provision found in a note executed by the defendants.

■■ Under principle of estoppel in pais, person cannot assume position in his business relations with another respecting pecuniary transaction on which latter, acting reasonably, has right to rely, and after latter has so acted change his position to latter's prejudice and obtain judicial aid to enable him to effectuate his fraudulent purposes. (*Lincoln Park Arms Building Corp. v. United States Fidelity & Guaranty Co.* (1937), 287 Ill. App. 520, 5 N.E.2d 773.) Although it has been held that fraud is a necessary element of estoppel, it is not necessary that there be a fraudulent intent, it being sufficient if a fraudulent effect would follow upon allowing a party to set up a claim inconsistent with his former declarations. *Milligan v. Miller* (1912), 253 Ill. 511, 97 N.E. 1054; *Richardson Lubricating Co. v. Kinney* (1929), 337 Ill. 122, 168 N.E. 886; *Dill v. Widman* (1952), 413 Ill. 448, 109 N.E.2d 765.

We do not ascribe any fraudulent intent to the plaintiff, however, its conduct, which was relied upon by the defendants to their detriment, constitutes estoppel as was determined by the trial court.

■■ It was also the ruling of the trial court that as far as the residence loan was concerned, the only interest rate which could be charged by the plaintiff to the defendants in the foreclosure proceedings was the initial rate of interest charged on the loan, being 7¾%. The trial court held that late charge for nonpayment as set forth in Regulation Z was barred because of the failure of the plaintiff to have provided for the assessment of such a charge in its bylaws as required by section 4—16(b) of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1971, ch. 32, par. 776(b)), and the plaintiff was estopped from attempting to collect the additional default interest of 8%. For the reasons set forth we agree with the trial court and accordingly the cross-appeal of the plaintiff as to the residence property loan, wherein a reversal of this portion of the trial court's judgment is prayed for, is denied.

The plaintiff and defendants agree that in the computation of attorney fees a fee schedule could be used as a guideline. The court utilized such schedule and allowed attorney fees in the sum of $1,921.45 as to the residence loan. We fail to find in the record that the defendants ever interposed any objections to these fees allowed by the trial court and accordingly we affirm such allowance.

Directing our attention to the garage or business loan, we find that the trial court found that in computing the amount due and owing on this loan

late payment charges as set forth in a Regulation Z disclosure were to be excluded, presumably on the basis that the plaintiff by its bylaws had failed to provide for them as required by section 4—16(b) (Ill. Rev. Stat. 1971, ch. 32, par. 776(b)); however, the default interest charge in event of default provided for in the business note and in the sum of 10% was to be allowed.

In examining the United States Code as it regards consumer credit protection we find that 15 U.S.C. §1602(h) (1970), provides:

"The adjective 'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes."

Section 1603 provides:

"This subchapter does not apply to the following:

(1) Credit transactions involving extensions of credit for business or commercial purposes, or to government or governmental agencies or instrumentalities, or to organizations." 15 U.S.C. §1603 (1970).

■■ As to the business loan we have a situation where the truth in lending law did not require the plaintiff to prepare for and provide the defendants with a Regulation Z financial disclosure statement. Even though not required to do so, the plaintiff nevertheless did provide the defendants with such a disclosure statement. The trial court in its memorandum opinion stated:

"The purpose of the Truth in Lending Law is to protect consumers from certain credit practices by the business community which Congress deemed objectionable. It is a recognition that where the consumer deals with the business community he is often not dealing at arms length both because he is financially unable to do so and because he is often untrained in the ways of business and unable to comprehend the full import of the transaction until it is too late."

■■ We subscribe to these views expressed by the trial court and are of the opinion that the defendants had the right to rely on and did rely on the Regulation Z submitted to them by the plaintiff even though there was no legal obligation to do so. We are not unmindful of the fact that the record discloses that the defendants on March 26, 1971, borrowed from the plaintiff the sum of $24,300 (the residence loan) and they received from the plaintiff a Regulation Z disclosure statement. On July 16, 1971, approximately 3½ months later, the defendants borrowed from the plaintiff the sum of $75,000 (the business loan) and again received from

the plaintiff a Regulation Z disclosure statement even though the plaintiff was not required to provide the same.

It would be totally unrealistic to presume that the defendants knew the regulations of the truth in lending law and were aware of the fact that on the first loan they were entitled to a disclosure statement and on the second they were not. As we have previously stated, a Regulation Z statement is a total, concise, summarized embodiment of all charges, fees and factors relating to a credit transaction.

For the reasons we have just expressed, coupled with the reasons we set forth regarding the residence loan, we are of the opinion that the plaintiff is estopped from assessing the default interest of 10% as set forth in the note executed by the defendants when they perfected the business loan. We reach this conclusion even though the plaintiff was under no legal obligation to provide a Regulation Z disclosure statement, since in doing so the defendants were entitled to rely on the provisions contained in such statement which superseded the provisions in their promissory note. Having reached this conclusion, *quare,* are the defendants obligated to pay the late charges as set forth in the Regulation Z statement? We believe not, for again we can only conclude that such charges are not permissible since plaintiff failed to provide for the same in its bylaws as required by section 4—16(b) of the Illinois Savings and Loan Act (Ill. Rev. Stat. 1971, ch. 32, par. 776(b)).

On the business loan as on the residence loan the interest rate which can be charged by the plaintiff to the defendants in the foreclosure proceedings is the initial rate of interest charged on the loan, being 8½%. Having reached this conclusion the attorney fees allowed by the trial court as to the foreclosure proceedings regarding the business loan should be modified. The plaintiff concurs with this ruling as to fees in that in its brief it is stated that the amount of attorney fees may be modified only if the amount found to be owing on the business loan is modified.

The defendants raise the issue that contract penalties are not enforceable unless reasonable. This issue is directed at the amount found by the trial court to be due and owing the plaintiff on the business loan which defendants characterize to be an unconscionable amount. Having concluded that this amount should be modified, this issue raised by the defendants is no longer tenable and we need not consider it.

The plaintiff argues that the defendants cannot raise the issue of estoppel in this case since such issue was not properly raised before the trial court. We find that the record belies such contention. On January 10, 1977, the defendants in a post trial motion did raise the issue as a grounds for vacating the decree of foreclosure. Subsequently on February 10, 1977, the defendants filed a supplemental answer which contained an affirmative defense based on estoppel. The plaintiff not only did not

object to the filing of the supplemental answer but elected to file an answer to it. It should be further noted that the trial judge filed a memorandum opinion in this case and in that opinion one of the trial court's rulings was based upon the doctrine of estoppel. The trial court having predicated a ruling upon estoppel, we conclude that such issue was preserved by the defendants and is properly before this court.

For the reasons set forth the judgment of the trial court entered as to the residence loan and the award of attorney fees pertaining to the same is affirmed. The judgment of the trial court as to the business loan and the award of attorney fees as to this loan is hereby reversed and this cause is remanded to the trial court for a recomputation of the amount due and owing on the business loan and the award of attorney fees pertaining to the same, and said recomputation should be made in accordance with the directions contained in this opinion.

Affirmed in part, reversed in part, and remanded with directions.

STENGEL, P. J., and ALLOY, J., concur.