In re Walter UNDERWOOD, Mary Linda B. Underwood, Debtors.

Walter UNDERWOOD, et ux.,
Plaintiffs,

v.

AMERICAN HOME MORTGAGE
CORP., Defendant.
(Two Cases)

Bankruptcy No. 7–85–00125–R.
Adv. Nos. 7–86–0077, 7–86–0160.

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

Nov. 4, 1986.

William G. Anderson, Roanoke, Va., for debtor/plaintiffs.

Lutins & Shapiro, Roanoke, Va., for defendant.

J. Glenwood Strickler, Roanoke, Va., trustee.

H. CLYDE PEARSON, Chief Judge.

The Complaint raises the following issues:

(1) Whether the loan of the Defendant, American Home Mortgage Corporation, to the Debtor/Plaintiffs violated the Consumer Credit Protection Act, 15 U.S.C. § 1601, *et seq.*, commonly known as the Truth In Lending Act, and the regulations promulgated thereunder, 12 C.F.R. § 226.1;

(2) Whether the loan violated Virginia usury laws; and

(3) Whether the Plaintiffs may sell free of liens the real estate in question.

Walter and Mary Linda Underwood (Debtors) filed their Chapter 13 case in this Court on February 5, 1985, and this adversary proceeding on March 26, 1986. Upon trial, the relevant facts appeared as follows.

The Debtors applied to Valley Acceptance Corporation, Roanoke, Virginia, for a loan. They needed approximately $10,-000.00, the proceeds of which were to be used to purchase the equity interest of Mr. Underwood's former wife in the residence and real estate in question. At the time of the application, there existed upon this real estate a regular low interest amortized first Deed of Trust lien and note in favor of First American Bank with a remaining balance of $6,901.04. The application for loan

was ultimately processed by employees of Valley Acceptance Corporation, representing loan proceeds of $24,520.00.

The testimony, primarily of Mrs. Underwood, reflects that sundry documents were signed by the Underwoods at Valley Acceptance's office. Some documents show a date of July 25, 1984, and others, July 26, 1984, although the testimony indicates that the Underwoods appeared at Valley Acceptance's office only once. Once Ms. Simmons, employee of Valley Acceptance, apparently worked up the loan information and prepared the documentation, which documents were signed by the Underwoods in a hurried fashion. Mrs. Underwood testified that the documents were in blank, and when inquiry was made of Ms. Simmons as to why the forms were blank, she replied that they would be filled in later. She testified that she was given an incomplete copy of the federal Truth In Lending Act Disclosure Statement.

The loan proceeds, as appears from the settlement statement apparently prepared by the closing attorney, reflects disbursements as follows:

Discount—$7,200.00

Service Charge—$480.00

Appraisal—$200.00

Attorney's Fee—$200.00

Interest from 8/1–8/7—$79.40

Recordation Fee—$219.40

Title Insurance—$80.50

First American Bank Payoff—$6,901.04

Treasurer of Roanoke County—$1,560.90

Dorothy Dillon, Esquire, Counsel for the former Mrs. Underwood—$10,000.00

Security Pacific—$1,729.29

ERIE—$47.00,

with a remaining sum to the borrowers of $3,502.47, making a total of $32,200.00.

The Defendant introduced at trial only one witness, one Zane Frye, custodian of records, who was employed as Operations and Servicing Manager of the Defendant on October 9, 1985. Frye's employment date was long past the date of the transactions involved herein, and the witness had no personal knowledge of any facts relating to the events, documents, or transactions involved.

Among documents introduced was the Disclosure Statement which contains the signatures of the Underwoods, dated July 25, 1984. The Defendant also introduced a copy of a form entitled "Notice of Right to Cancel". This document was dated July 26, 1984, and also reflects the signatures of Mr. and Mrs. Underwood. Mrs. Underwood testified that Ms. Simmons at Valley Acceptance did not give them a copy of the Notice of Right to Cancel, nor had they received this document. As herein noted, neither Ms. Simmons nor anyone else at Valley Acceptance was called as a witness.

The copy of the Deed of Trust dated July 26, 1984 introduced by the Defendant noted at the top thereof, "DEL. Cranwell Law Firm", apparently indicating that the loan would be closed by the Cranwell firm, as was, in fact, so done, apparently on the date of August 3, 1984. Defendant's Exhibit #6 was headed "Amount Financed Itemization" and, on a line designated "Itemization of Amount Financed", there appears the figure of $32,500.00. Defendant's Exhibit #1, the "Disclosure Statement", notes, under "Amount Financed", the sum of $24,520.00.

Defendant further introduced, through Frye, as a part of its official records Exhibit #5, which appeared to be a letter over the name of Edward P. Burdick, a quality assurance officer, dated June 5, 1985. This letter was written approximately ten or eleven months after the loan was closed. This letter allegedly called attention to the erroneous Disclosure Statement and acknowledged its error, setting forth that the correct amount of finance charge should have been $68,820.80 instead of the sum set forth of $61,140.80. This letter merely requested that the Underwoods place it among their loan papers and that they need not reply. There was no offer or notice of any rescission rights set forth. The Underwoods deny ever receiving a copy of the letter and, of course, the witness Frye could testify only that the letter was a part

of the Defendant's file bearing on this transaction.

The closing of the loan transaction, as above noted, occurred on August 3, 1984 at the law firm of CRANWELL, FLORA & MOORE. At that time, the Underwoods learned for the first time that American Home Mortgage Corporation, not Valley Acceptance Corporation, was the lender. The Underwoods executed a note for $32,-200.00 with an interest rate of eighteen per cent (18%) per annum and annual percentage rate of 24.73%. The $32,200.00 included a $7,200.00 "Discount" and a "Service Charge" of $480.00, as well as the $24,-520.00 financed. The Service Charge and Discount were not included in the "Finance Charge" portion of the Disclosure Statement. The Disclosure Statement stated a Finance Charge of $61,140.80, an understatement of $7,680.00.

The copy of an unsigned letter dated June 5, 1985 indicated that a computer error had resulted in the understatement of Finance Charge on the Disclosure Statement. It contained no language regarding an adjustment of the Finance Charge or payment schedule. The letter refers to computer error, although the amount financed error and the amount of finance charge appearing on the Disclosure Statement were items apparently typed thereon by Valley Acceptance. Mr. Burdick, the alleged author of the letter, did not appear as a witness.

On June 2, 1986, the Plaintiffs served on the Defendant a letter notifying it of their rescission of the loan transaction. The rescission was based on alleged violations of the Truth In Lending Act and Regulation Z [12 C.F.R. § 226.1, *et seq.* (1986)]. The Defendant has not responded to the rescission letter. Defendant seeks to foreclose its Deed of Trust to satisfy Debtors' obligation.

Plaintiffs have a contract for the sale of the residence, free of liens, for which they seek approval of this Court. Defendant objects to the private sale by Debtors. The contract price is $49,000.00, which appears to be a fair price.

The Plaintiffs propose that the standing Chapter 13 Trustee pay the Defendant's liability from the proceeds of the sale. The Defendant claims that it is entitled to a $41,668.56 payoff, which includes the principal balance, late charges, and a *per diem* interest charge. The Plaintiffs claim that due to the alleged Truth In Lending Act and Regulation Z violations and the alleged violations of Virginia usury laws, the Defendant is entitled to receive only $22,-912.96, the amount financed, less their payments on the account.

Finally, the Plaintiffs have prayed that the Court order the Defendant to pay reasonable attorney's fees to counsel for the Plaintiffs.

### Truth In Lending Act Claim

The transaction between the parties was a consumer transaction subject to the Truth In Lending Act and Regulation Z. *See* 15 U.S.C.S. § 1602(h) (Law.Co-op.1982 & Supp.1986). The Underwoods are "consumers". *Id.* American Home Mortgage Corporation is regularly in the business of extending credit for which the payment of a finance charge is required, and is the person to whom the debt was initially owed and is, therefore, a "creditor" as defined by 15 U.S.C.S. § 1602(f) (Law.Co-op.1982 and Supp.1986).

The stated purpose of the Truth In Lending Act is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit...." 15 U.S.C.S. § 1601(a) (Law.Co-op. 1982); *see Powers v. Sims & Levin Realtors*, 396 F.Supp. 12 (E.D.Va.1975), *aff'd in part and rev'd in part on other grounds*, 542 F.2d 1216 (4th Cir.1976). An objective of the Truth In Lending Act is to inform the consumer not only of the true cost of credit, but also of the nature of the terms of credit offered to him, including a description of the components of finance charge. *Meyers v. Clearview Dodge Sales, Inc.*, 384 F.Supp. 722, 726 (E.D.La.1974), *aff'd in part and rev'd in part on other*

grounds, 539 F.2d 511 (5th Cir.1976), *cert. denied*, 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977). To this end, the Truth In Lending Act requires clear and conspicuous disclosure to the consumer of certain information.[1] "Disclosure" under the Truth In Lending Act is a term of art which refers to the manner in which a creditor must convey the information which Congress deemed basic to an intelligent assessment of a credit transaction. *Smith v. U.S. Credit Corp.*, 801 F.2d 661 (4th Cir.1986) (slip opinion); *Doggett v. Ritter Finance Co.*, 384 F.Supp. 150, 153 (W.D. Va.1974). The finance charge and annual percentage rate involved in a transaction were considered by the Congress to be of such importance that they are required to be disclosed more conspicuously than other information that must be disclosed pursuant to the Truth In Lending Act. 15 U.S. C.S. § 1632(a) (Law.Co-op.1982 and Supp. 1986). The Truth In Lending Act and Regulation Z each define "finance charge" and provide examples of charges that must be included in the Finance Charge portion of the Disclosure Statement.[2] By requiring that the charges listed in the itemization provisions of the Truth In Lending Act and Regulation Z either be specifically itemized or else included in the Finance Charge, "the provisions ensure that all costs of credit will be revealed to the consumer and minimize the possibility that such costs may be hidden in a group of seemingly legitimate non-credit charges that have been massed together under a single dollar figure." *Desselles v. Mossy Motors, Inc.*, 442 F.Supp. 897, 900 (E.D.La.1978).

As a general principle, all ambiguities in the Disclosure Statement are construed against the lender as one upon whom the burden of compliance lies and as one who drafted the Disclosure Statement. *First Sav. & Loan Ass'n v. Kern*, 55 Ill. App.3d 838, 13 Ill.Dec. 299, 370 N.E.2d 1326 (1977). The Truth In Lending Act and Regulation Z are to be construed liberally in favor of the consumer and strictly enforced because their purpose is to protect consumers. *Sellers v. Wollman*, 510 F.2d 119 (5th Cir.1975); *Allen v. Beneficial Finance Co.*, 393 F.Supp. 1382 (N.D.Ind. 1975), *aff'd*, 531 F.2d 797 (7th Cir.1976), *cert. denied*, 429 U.S. 885, 97 S.Ct. 237, 50 L.Ed.2d 166 (1976).

The Plaintiffs assert that the Defendant violated the Truth In Lending Act and Regulation Z by its failure to provide the Plaintiffs with a notice of their right to rescind on July 26, 1984 when they completed closing papers, or on August 3, 1984 when the closing occurred. Both 15 U.S. C.S. § 1635(a) (Law.Co-op.1982 and Supp. 1986) and 12 C.F.R. § 226.23(a) and (b) prescribe the manner in which a consumer must be notified of his right to rescind when the credit transaction creates a security interest in the principal dwelling of the consumer.[3] It is acknowledged by the par-

1. Section 15 U.S.C.S. § 1631(a) provides that "... Each creditor shall disclose clearly and conspicuously, in accordance with the regulations of the Board, to each person to whom consumer credit is extended, the information required under this chapter ...."

2. **15 U.S.C.S. § 1605(a)** (Law.Co-op.1982 and Supp.1986) states:
   Except as otherwise provided in this section, the amount of the finance charge in connection with any consumer credit transaction shall be determined as the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction. Examples of charges which are includ-

ed in the finance charge include any of the following types of charges which are applicable.
   (1) Interest, time price differential, and any amount payable under a point, discount, or other system of additional charges.
   (2) Service or carrying charge.
   (3) Loan fee, finder's fee, or similar charge.
   (4) Fee for an investigation or credit report.
   (5) Premium or other charge for any guarantee or insurance protecting the creditor against the obligor's default or other credit loss.
   12 C.F.R. § 226.4 was promulgated pursuant to this section.

3. 15 U.S.C.A. § 1635(a) provides the following:
   **§ 1635. Right of rescission as to certain transactions.**
   (a) Except as otherwise provided in this section, in the case of any consumer credit transac-

ties that the Defendant acquired a security interest by virtue of its Deed of Trust in the principal dwelling of the Plaintiffs and that the Defendant was, therefore, required to notify the Plaintiffs of their right to rescind the transaction. The Defendants produced a copy of a "Notice of Right to Cancel" dated July 26, 1984 and signed by the Plaintiffs. The form itself complies with the requirements of § 226.23 of Regulation Z.

The issue is whether the Underwoods were, in fact, provided two copies of the form as is required by Regulation Z. Section (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title [15 U.S.C.S. §§ 1601, *et seq.*], whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

Subsections (a) and (b) of 12 C.F.R. § 226.23, which was promulgated to implement 15 U.S.C.A. § 1635, provide the following guidelines:

**§ 226.23. Right of rescission.**

(a) Consumer's right to rescind. (1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction except for transactions described in paragraph (f) of this section.

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day

tion 1635(c) of the Truth In Lending Act [4] provides that the introduction of a written acknowledgement of receipt of the notice of right to rescind creates a rebuttable presumption of delivery. *See Powers v. Sims & Levin Realtors, supra* ; *Award Lumber & Constr. Co., Inc. v. Humphries,* 110 Ill.App.3d 119, 65 Ill.Dec. 676, 441 N.E.2d 1190 (1982); *Whitlock v. Midwest Acceptance Corp.* 449 F.Supp. 631 (E.D. Mo.1977), *rev'd on other grounds,* 575 F.2d 652 (8th Cir.1978); *College Park Credit Corp. v. Aitkens,* 317 So.2d 238 (La.App. 1975). The Underwoods have, however, following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with § 125(f) of the act.

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of s security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

(5) The date the rescission period expires.

**4. 15 U.S.C.S. § 1635(c)** (Law.Co-op.1982) provides:

(c) Rebuttable presumption of delivery of required disclosures.

Notwithstanding any rule of evidence, written acknowledgement of receipt of any disclosures required under this title [15 U.S.C.S. § 1601, *et seq.*] by a person to whom a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

presented sworn affidavits and positive testimony at trial that they did not receive notice of their right to rescind. In addition, Mrs. Underwood testified that no forms were provided and that they were "rushed through" and told by Ms. Simmons at Valley Acceptance Corporation that the incomplete forms would be filled in later. Mrs. Underwood's testimony is supported by the dates on the Disclosure Statement and Notice of Right to Cancel allegedly signed and given to the Underwoods on the same day. The two forms bear different dates; the Disclosure Statement has "July 25" typed in as the date of receipt, and the Notice of Right to Cancel has "July 26" typed in as the date of receipt. However, as herein noted, there is no evidence that the Underwoods were at Valley Acceptance on more than one day.

The Court finds that the presumption of delivery created by Section 1635(c) has been rebutted by the affidavits of the Plaintiffs, the testimony of Mrs. Underwood, the discrepancy in the dates on the Notice of Right to Cancel and Disclosure Statement, and the failure of the Defendant to introduce any witness who could rebut the assertions of nondelivery made by the Plaintiffs. Because the Plaintiffs did not receive notification of their right to rescind the transaction, their right to rescind did not end on July 31, 1984 as stated on the copy of the Notice of Right to Cancel introduced into evidence by the Defendants. The Underwoods had a continuing right to rescind "until midnight of the third business day following the consummation of the transaction *or* the delivery of the information and rescission forms required under this Section [15 U.S.C.S. § 1635] together with a statement containing the material disclosures required under this title [15 U.S.C. § 1601, *et seq.* ], whichever is later." 15 U.S.C.S. § 1635(a) (Law. Co-op.1982 and Supp.1986).

The Underwoods would have had a continuing right to rescind the transaction even if they had been given the copies of the Notice of Right to Cancel because the Defendant failed to make what now appears an admittedly erroneous and material disclosure on the Disclosure Statement. Regulation Z provides that Finance Charge is a "material disclosure" that must be made in order to terminate a consumer's right to rescind under Section 1635(a) of the Truth In Lending Act. 12 C.F.R. § 226.23 n. 48. The Finance Charge stated on the Disclosure Statement was $7,680.00 less than the amount the Underwoods were actually being charged. An inaccuracy of this magnitude clearly constitutes a failure to make a material disclosure [5] and gives rise to a continuing right to rescind under Section 1635(a). The Underwoods were entitled to rescind the transaction at any time within three years of the consummation of the transaction unless provided a statement containing the correct finance charge along with rescission forms. 15 U.S.C.S. § 1635(a) and (f) (Law.Co-op.1982 and Supp.1986); *Powers v. Sims & Levin Realtors,* 396 F.Supp. 12 at 25; *Sosa v. Fite,* 498 F.2d 114, 117–118 (5th Cir.1974). The Underwoods state that they have not even as yet received notification that an error was made on the Disclosure Statement. American Home Mortgage Corporation asserts that it notified the Underwoods of the error by the letter dated June 5, 1985, approximately ten months after the transaction occurred. Mr. Frye, American Home Mortgage Corporation's Operations and Servicing Manager, testified that the copy was found in the Defendant's files relating to the Underwoods' loan. The letter was allegedly sent by regular mail; therefore, there are no receipts showing delivery to the Underwoods. The Defendant did not call as a witness Mr. Burdick, the alleged drafter of the letter, or any other employee who might have knowledge of whether or in what manner the letter was mailed to the Underwoods. The circumstances here required such. *See Henderson v. Richardson Co.,* 25 F.2d 225

---

5. "The finance charge shall be considered accurate if it is not more than ... $10 above or below the exact finance charge in a transaction involving an amount financed of more than $1,000." 12 C.F.R. § 226.18 n. 41.

(4th Cir.1928). In view of the Defendant's failure to refute the positive denial of receipt made by Mrs. Underwood, the Court concludes that the Defendant did not notify the Plaintiffs of the error made on the Disclosure Statement. It has long been the rule that positive evidence is given greater weight than negative or indefinite evidence. *See Courtney v. Walker*, 26 F.2d 583 (4th Cir.1928).

Although not necessary in its analysis and conclusions, the Court notes that even if the June 5, 1985 letter had been sent to and received by the Underwoods, it would not have extinguished their right to rescind the transaction under 15 U.S.C.S. § 1635(a) (Law.Co-op.1982 and Supp.1986). The letter indicates that "a computer error resulted in the understatement of the Finance Charge" on the Disclosure Statement. The Disclosure Statement given to the Underwoods was not a computer printout. The Finance Charge was typed on the form. The letter allegedly sent to the Underwoods stated the amount actually being charged as Finance Charge. The letter indicated that no response was required of the Underwoods and that other information provided on the Disclosure Statement was correct. There is no indication that forms for rescission were provided along with the letter to the Underwoods. The letter did not state whether any adjustments were being made to the Underwoods' account. Under the Truth In Lending Act, the creditor must notify the person concerned of the error and "make whatever adjustments in the appropriate account are necessary to insure that the person will not be required to pay a charge in excess of the amount or percentage rate actually disclosed." 15 U.S.C.S. § 1640(b) (Law.Co-op.1982 and Supp.1986). While the Defendant did disclose the finance charge that it was actually charging, it failed to adjust the Plaintiffs' account or state that no adjustment was necessary. It also failed to notify the Underwoods that they had a right to rescind. The Truth In Lending Act is remedial in nature, and "substance rather than form of credit transactions should be examined in cases arising under it." *Hickman*

*v. Cliff Peck Chevrolet, Inc.*, 566 F.2d 44, 46 (8th Cir.1977). If the Defendant had sent the letter it allegedly sent to the Underwoods, it would have appeared to have been in compliance with the requirement of Section 1635(a) because it disclosed the actual Finance Charge; however, if the substance of the transaction is considered, it is obvious that the remedial purpose of the Truth In Lending Act was not carried out. The Defendants disclosed the Finance Charge, but failed to enclose rescission forms so that the Plaintiffs could rescind the transaction once they received all material disclosures. For this reason, the letter would not have extinguished the Underwoods' right to rescind the transaction.

■ On June 2, 1986, the Underwoods notified American Home Mortgage Corporation that they were exercising their right to rescind. The Court finds that the rescission was timely and effective because it was made prior to the delivery by the Defendant of the information and rescission forms required by the Truth in Lending Act, prior to the receipt by the Plaintiffs of a statement containing the material disclosures required by the Truth In Lending Act, and prior to the expiration of a three-year period following the consummation of the transaction. *See* 15 U.S.C.S. § 1635(a) and (f) (Law.Co-op.1982 and Supp.1986). When an obligor exercises his right to rescind under Section 1635, "he is not liable for any finance or other charge, and any security interest given by the obligor ... becomes void upon such a rescission." 15 U.S.C.S. § 1635(b) (Law.Co-op.1982 and Supp.1986). The Underwoods may benefit from this provision because they have properly exercised their right to rescind.

The Defendant claims that it is free from liability even though it violated the Truth In Lending Act by failing to make a material disclosure, the Finance Charge, on the Disclosure Statement. American Home Mortgage Corporation asserts that its violation was not intentional and resulted from a *bona fide* error under 15 U.S.C.S. § 1640(c) (Law.Co-op.1982 and Supp.1986). That Section states:

"(c) A creditor ... may not be held liable in any action brought under this section or section 125 [15 U.S.C.S. § 1635] for a violation of this title if the creditor ... *shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.* Examples of a bona fide error include ... computer malfunction and programming ..., except that an error of legal judgment with respect to a person's obligations under this title is not a bona fide error. (emphasis added)

The Defendant asserts that the fact that the "Total of Payments" was correct on the Disclosure Statement establishes that the error was unintentional and *bona fide.* Section 1640(c) of the Truth In Lending Act specifically lists an error resulting from a computer malfunction as an example of a *bona fide* error. The Defendant has merely stated that a computer error occurred without substantiating the assertion. The attorney's itemization and note show the amount financed as $32,200.00, whereas the Disclosure Statement states the amount to be $24,520.00. This is not an inadvertent error. The exemption from liability provided in Section 1640(c) applies only to clerical errors. *Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161 (7th Cir.1974); *Palmer v. Wilson,* 502 F.2d 860 (9th Cir.1974); *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928 (E.D.La. 1974), *aff'd without opinion,* 500 F.2d 1182 (5th Cir.1974); *Doggett v. Ritter Finance Co.,* 384 F.Supp. 150 (W.D.Va.1974); *Buford v. American Finance Co.,* 333 F.Supp. 1243 (N.D.Ga.1971); Annotation, *What Constitutes Truth-In-Lending Act Violation Which "Was Not Intentional and Resulted From a Bona Fide Error" Within Meaning of § 130(c) of Act (15 U.S.C.S. § 1640(c),* 27 A.L.R.Fed. 602

(1976). The burden of proving that a clerical error, and not a mistake of law, occurred is on the Defendant. *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407 (7th Cir.1980); *Turner v. Firestone Tire & Rubber Co.,* 537 F.2d 1296 (5th Cir.1976). Even if the Court accepted, *arguendo,* that the error was clerical, the Defendant has failed to meet its burden of proof under Section 1640. The test articulated in 15 U.S.C.S. § 1640(c) (Law.Co-op 1982 and Supp.1986) is a two-pronged test. The Defendant has the burden of proving that the error was unintentional and *bona fide and* that it occurred notwithstanding the maintenance of procedures reasonably adapted to avoiding such errors. *Turner v. Firestone Tire & Rubber Co., supra.* The Defendant has failed to establish that it maintained a procedure to avoid the type of error that occurred on the Underwoods' Disclosure Statement. *See Mirabel v. General Motors Acceptance Corp.,* 537 F.2d 871 (7th Cir.1976), *later app.,* 576 F.2d 729 (7th Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 699 (1978); *Detillo v. J.R. Moore Farm Supply, Inc.,* 449 F.Supp. 559 (W.D.Pa.1978).

The Underwoods had a right to and did validly exercise their right to rescind the transaction. They must pay the Defendant the amount actually lent to them less any sums they paid to the Defendant on the account. The Defendant will not receive any of the finance or other charges it made because of its violation of the Truth In Lending Act. 15 U.S.C.S. § 1635(a) (Law. Co-op.1982 and Supp.1986). The security interest in the residence of the Underwoods shall be released as a result of the rescission. *Id.*

In addition to their right to rescind, the Underwoods are entitled to collect from American Home Mortgage Corporation a civil penalty of $1,000.00 pursuant to 15 U.S.C.S. § 1640(a)(2)(A)(i)[6]. The

**6. 15 U.S.C.S. § 1640(a)** (Law.Co-op.1982) provides:

  (a) Individual or class action for damages; amount of award; factors determining amount of award. Except as otherwise provided in this

section, any creditor who fails to comply with any requirement imposed under this chapter [15 U.S.C.S. §§ 1631, *et seq.*] òr chapter 4 or 5 of this title [15 U.S.C.S. §§ 1666, *et seq., 1667, et*

Plaintiffs stated in their brief that they were pursuing their right to rescind under § 1635 rather than a civil penalty under § 1640. The remedies are not inconsistent, and a plaintiff need not elect between the remedies. *Eby v. Reb Realty, Inc.,* 495 F.2d 646 (9th Cir.1974); *Sellers v. Wollman,* 510 F.2d 119 (5th Cir.1975). They are not mutually exclusive remedies, and the consumer may be entitled to both. *Sellers v. Wollman, supra; Powers v. Sims & Levin Realtors, supra.* The amount of damages to be awarded when disclosure violations under the Truth In Lending Act are found is not discretionary; the court must award the successful litigant-consumer twice the finance charge involved, except that the liability may not be greater than $1,000.00. 15 U.S.C.S. § 1640(a)(2)(A)(i) (Law.Co-op.1982 and Supp.1986); *Grant v. Imperial Motors,* 539 F.2d 506 (5th Cir.1976); *Villaneuva v. Motor Town, Inc.,* 619 F.2d 632 (7th Cir.1980); *O'Neil v. Four State Builders & Remodelers, Inc.,* 484 F.Supp. 18 (E.D.Pa.1979). The Plaintiffs, as joint obligors in the one credit transaction, are entitled to only one civil penalty of $1,000.00. *Powers v. Sims & Levin Realtors,* 542 F.2d 1216 at 1219–20.

The Underwoods have not presented evidence of any actual damages suffered. Therefore, the Court is unable to award damages pursuant to 15 U.S.C.S. § 1640(a)(1) (Law.Co-op.1982 and Supp. 1986).

The Court will determine, after further hearing and submission of additional pleadings and documentation, the amount to be assessed against American Home Mortgage Corporation for the costs of the action and attorney's fees pursuant to 15 U.S.C.S. § 1640(a)(3) (Law.Co-op.1982 and Supp.1986).

### Virginia Usury Law Claim

■ The Plaintiffs assert that the substantive elements of the transaction violated Virginia's usury statute. Specifically, they allege violation of *Virginia Code* § 6.1–330.37 A (1983), which exempts loans secured by a first Deed of Trust or first mortgage on real estate from regulation of the interest rates charged. Section 6.1–330.37 A provides the following:

"Notwithstanding the provisions of §§ 6.1–330.9, 6.1–330.11, and 6.1–330.41 or any other provision relating to interest or usury, contracts made for the loan or forbearance of money, secured or to be secured by a first deed of trust or first mortgage on real estate ... may be lawfully enforced as agreed in the obligation of indebtedness *or* in an agreement signed by the borrower *or* at the interest rate stated therein on the principal amount loaned or forborne or contracted to be lent or forborne. Disclosure of charges, not otherwise specified in the note, deed of trust or mortgage, in an interest disclosure pursuant to the federal interest disclosure law, shall constitute compliance with this statute. (emphasis added)

The Underwoods borrowed $24,520.00 and executed a note in the principal sum of $32,200.00 with a stated interest rate of eighteen per centum (18%) per annum, reflecting an APR rate of 24.73% interest. This note brings the transaction within the exemption created by Section 6.1–330.37 A

*seq.*] with respect to any person is liable to such person in an amount equal to the sum of—
(1) any actual damage sustained by such person as a result of the failure;
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, or (ii) in the case of an individual action relating to a consumer lease under chapter 5 of this title [15 USCS §§ 1667, *et seq.*], 25 per centum of the total amount of monthly payments under the lease, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; and
(3) in .the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

in three ways: it sets forth the interest rate "in the obligation of indebtedness"; it is "an agreement signed by the borrower"; and it states an interest rate on the principal amount lent.

Because the Court has found that the Defendant violated the Truth In Lending Act by understating the finance charge, further consideration of this question is not warranted. Due to the violation of the federal law, the Defendant is not entitled to receive any finance or other charge.

Accordingly, an Order will be entered permitting the sale of the property that secured the loan, ordering the Defendant to release the lien created by the first mortgage, assessing a civil penalty of $1,000.00 against the Defendant, and allowing the Plaintiffs to tender documentation of costs and attorney's fees incurred as a result of this litigation.